**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

PAUL EDWARD HAMMOND,

Defendant.

Criminal Action No. 02-294 (BAH)

Chief Judge Beryl A. Howell

**MEMORANDUM OPINION**

In 2003, the defendant Paul Hammond pleaded guilty to possessing a firearm after having

a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1), and to armed robbery, in

violation of D.C. Code §§ 22-2901, 22-3202. He was subsequently sentenced to 115 months'

imprisonment on the firearm conviction and 240 months' imprisonment on the armed robbery

conviction, to be served consecutively. Judgment in a Criminal Case ("Judgment") at 2, ECF

No. 25. Under the United States Sentencing Guidelines ("Guidelines") that governed

Hammond's sentence for the federal firearm conviction, his Guidelines sentencing range for the

firearm conviction was 92 to 115 months' imprisonment, based on his two prior convictions for a

"crime of violence." *See* Judgment, Statement of Reasons ("SOR"), at 6, ECF No. 25; *see also*

U.S.S.G. § 2K2.1(a)(2) (2003).[1]

Since Hammond's sentencing, the Supreme Court has held unconstitutional laws that

enhance criminal sentences due to a defendant's prior conviction for a crime of violence, as

defined by the so-called "residual clause." *See Johnson v. United States*, 135 S. Ct. 2551 (2015).

Hammond claims that because he was sentenced at a time when the Guidelines had the force of

---

[1]     Hammond's instant motion relates exclusively to his sentence for the federal firearm conviction. *See* Def.'s
Supp. Mot. Vacate at 1 n.1, ECF No. 27.

law, and because his sentence was enhanced through application of the residual clause, he is entitled to resentencing on his firearm conviction. Thus, Hammond filed a motion, under 28 U.S.C. § 2255, asking that his 115-month sentence be vacated and that he be resentenced under the current Guidelines. *See* Def.'s Mot. Vacate, Set Aside, or Correct Sentence ("Def.'s § 2255 Mot."), ECF No. 24, as supplemented, Def.'s Supp. Mot. Vacate ("Def.'s Supp. § 2255 Mot."), ECF No. 27.

To prevail, Hammond must first overcome two procedural barriers imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, and then establish that the Supreme Court itself has recognized, and made retroactive, a right not to have a criminal sentence enhanced pursuant to the mandatory Guidelines' residual clause. Hamond has made those showings. Second, Hammond must establish that without the residual clause, his prior convictions do not qualify as crimes of violence. Hammond fails at this second stage because the prior convictions that served as the basis for his enhanced sentence constitute crimes of violence under the Guidelines' so-called "elements clause." Thus, Hammond's § 2255 motion is denied.

## I.    BACKGROUND

On April 15, 2002, a District of Columbia Metropolitan Police Department ("MPD") officer learned of a man at the intersection of Florida Avenue and V Street, N.W., Washington, D.C., wielding a handgun. Presentence Report ("PSR") ¶¶ 12–13, ECF No. 36. The officer approached a man at that intersection, later identified as Hammond, who lifted his shirt, and the officer observed a handgun. *Id.* ¶ 13. Hammond was arrested. *Id.* Shortly thereafter, MPD discovered that two men had just committed an armed robbery at a nearby clothing store. *Id.* ¶¶ 14–15. The investigation disclosed that Hammond was one of the two and that during the

robbery Hammond had struck a victim with a clothing rack, placed a gun to the victim's head, and pulled the trigger twice. *Id.* The gun did not fire and Hammond fled. *Id.*

As noted, Hammond pleaded guilty, in August 2003, to charges of unlawful possession of a firearm by a person with a prior felony conviction, in violation of 18 U.S.C. § 922(g)(1), and armed robbery, in violation of D.C. Code § 22-2901 (now codified at D.C. Code § 22-2801) and D.C. Code § 22-3202. *See* Plea Agreement at 1, ECF No. 17; *see also* Judgment at 1.

At Hammond's sentencing, in December 2003, the presiding judge generally adopted "the factual findings and guideline application in the [PSR]." Judgment, SOR, at 6. According to the PSR, Hammond had at the time of sentencing, four adult criminal cases resulting in convictions, including: (1) a Maryland conviction for shoplifting and possession of drug paraphernalia, PSR ¶ 33; (2) a D.C. Superior Court conviction for petty larceny and shoplifting, *id.* ¶ 34; (3) a federal conviction for bank robbery, *id.* ¶ 35; and (4) a Maryland conviction for robbery with a deadly weapon, *id.* ¶ 36. Based on the latter two convictions, in conjunction with Hammond having committed the federal firearm offense while under a criminal sentence, Hammond's criminal history category under the Guidelines was IV. *Id.* ¶¶ 37–39.

The PSR determined that Hammond's base offense level, under U.S.S.G. § 2K2.1(a)(2) (2003), was 24, PSR ¶ 22, which reflected that Hammond had "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense," U.S.S.G. § 2K2.1(a)(2) (2003).[2] This base offense level was increased by four levels, due to Hammond's possession of a gun in connection with another felony, PSR ¶ 23 (citing U.S.S.G. § 2K2.1(b)(5) (2003)), and reduced by two levels for his acceptance of responsibility, PSR ¶ 29 (citing U.S.S.G. § 3E1.1(a) (2003)). This resulted in a

---

[2] The PSR cites U.S.S.G. § 2K2.1(a)(1) for Hammond's base offense level of 24, *see* PSR ¶ 22, but this citation appears to be a typographical error, as the base offense level of 24 is set out in U.S.S.G. § 2K2.1(a)(2).

total offense level for the firearm conviction of 26.  PSR ¶ 30.  Hammond's criminal history category of IV and offense level of 26 resulted in a Guidelines range of 92 to 115 months' imprisonment.  U.S.S.G. Ch. 5 Pt. A (2003); *see also* Judgment, SOR, at 6.

As used in U.S.S.G. § 2K2.1 at the time of Hammond's sentencing, "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2."  U.S.S.G. § 2K2.1 cmt. n. 5 (2003).  In turn, § 4B1.2(a) of the Guidelines version under which Hammond was sentenced defined "crime of violence" in three ways.  First, under the "elements clause," crimes of violence included any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* § 4B1.2(a)(1) (2003).  Second, under the "enumerated-felonies clause," crimes of violence included "burglary of a dwelling, arson, or extortion" or a felony that "involves use of explosives."  *Id.* § 4B1.2(a)(2) (2003).  Third, under the "residual clause," crimes of violence included any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.*[3]

At the time of Hammond's sentencing, Congress's instruction that "court[s] shall impose a sentence of the kind, and within the range, referred to [in the Guidelines]," 18 U.S.C. § 3553(b)(1), was still effective.  Thus, Hammond was sentenced on his federal firearm conviction to a within Guidelines sentence of 115 months' imprisonment, to run consecutively with a 240-month sentence on the armed robbery conviction.  Judgment at 2.  According to the Bureau of Prisons, Hammond's scheduled release date is January 22, 2028.  *See* Find an Inmate,

---

[3]     The 2016 version of the Guidelines amended the definition of "crime of violence" by eliminating the residual clause and rewriting the enumerated-felonies clause to include "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."  *Compare* U.S.S.G. § 4B1.2(a)(2) (2003) *with* U.S.S.G. § 4B1.2(a)(2) (2016).

FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search "Paul Edward Hammond").

Hammond did not appeal his convictions or sentence.

In 2005, federal sentencing was affected by the first legal shift at the heart of this case. Over the preceding five years, the Supreme Court had ruled, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), that the Sixth Amendment protects a defendant's right to have all facts, other than a prior conviction, that the law makes essential to punishment, proved beyond a reasonable doubt. Then, in January 2005, the Supreme Court held that, because the mandatory Guidelines required judges to increase sentences based on facts found by only a preponderance of the evidence, the mandatory Guidelines suffered from the same constitutional infirmity identified in *Apprendi* and *Blakely*. *United States v. Booker*, 543 U.S. 220, 231–34 (2005). As a remedy, the provision making the Guidelines mandatory was severed. *Id.* at 245 (invalidating 18 U.S.C. § 3553(b)(1)). Thus, since *Booker*, the Guidelines have been advisory.

Ten years later, the Supreme Court, in *Johnson v. United States*, 135 S. Ct. 2551 (2015), held that the residual clause in the Armed Career Criminal Act of 1984 ("ACCA"), Pub. L. 98-473, 98 Stat. 1837, was unconstitutionally vague. Under the ACCA, a defendant convicted of a federal firearm offense, under 18 U.S.C. § 922(g), is subject to an enhanced sentence if the defendant has three or more prior convictions for "a violent felony or a serious drug offense, or both." *See* 18 U.S.C. § 924(e)(1). Pertinent here, § 924(e)(2)(B) defines "violent felony" in the same way the 2003 version of the Guidelines defined "crime of violence": first, in the elements clause, as having "as an element the use, attempted use, or threatened use of physical force against the person or another," 18 U.S.C. § 924(e)(2)(B)(i); second, in the enumerated-felonies

clause, as being one of several listed felonies, *id*. § 924(e)(2)(B)(ii); and, third, in the residual

clause, as involving "conduct that presents a serious potential risk of physical injury to another,"

*id*.[4] In *Johnson*, which considered a vagueness challenge only to the residual clause's definition

of violent felony, the Court ruled that "the indeterminacy of the wide-ranging inquiry required by

the residual clause both denies fair notice to defendants and invites arbitrary enforcement by

judges. Increasing a defendant's sentence under the clause denies due process of law." 135 S.

Ct. at 2557. "Two features of the residual clause conspire[d] to make it unconstitutionally

vague." *Id.* First, using the categorical approach to determine the risk that a prior conviction

posed "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime."

*Id.* Second, increasing punishment based on past convictions that posed a "serious potential risk

of physical injury to another" "leaves uncertainty about how much risk it takes for a crime to

qualify as a violent felony." *Id.* at 2558.

　　The following year, the Supreme Court made *Johnson* retroactive to cases on collateral

review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). Two months after *Welch*, to

avoid potential timeliness problems, Hammond filed an abridged § 2255 motion, *see* Def.'s

§ 2255 Mot., as permitted by this Court's June 2, 2016 Standing Order, *see* Standing Order (June

2, 2016), http://www.dcd.uscourts.gov/sites/dcd/files/1853_001.pdf (authorizing defendants

asserting the right to resentencing following *Johnson* to file abridged motions by June 26, 2016,

which motions would be supplemented by October 26, 2016).

　　By the time that Hammond filed his abridged § 2255 motion, the sentencing judge had

retired and this case was reassigned to the undersigned judge on June 21, 2016.

---

[4] 　　The only difference between the ACCA's definition of "violent felony" and the 2003 Guidelines' definition of "crime of violence" is that the ACCA's enumerated-felonies clause lists "burglary" while the Guidelines' pre-2016 enumerated-felonies clause lists "burglary of a dwelling." *Compare* 18 U.S.C. § 924(e)(2)(B)(ii) *with* U.S.S.G. § 4B1.2(a)(2) (2003).

Before the October 26, 2016 deadline, the Supreme Court granted *certiorari* in *Beckles v. United States* to resolve whether a sentence under the Guidelines that relied on application of the residual clause's definition of crime of violence suffered the same vagueness problem identified in *Johnson*. Following the grant of *certiorari*, this Court issued a second standing order staying the October 26, 2016 supplemental briefing deadline for defendants challenging the Guidelines' residual clause. *See* Standing Order 2 (Sep. 12, 2016), http://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo2.pdf.

*Beckles v. United States*, 137 S. Ct. 886 (2017), decided in March 2017, clarified that only laws that define crimes or fix permissible sentences are subject to vagueness challenges. *Id.* at 892. Post-*Booker*, the Guidelines do neither. *Id.* Rather, the advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* Thus, the advisory Guidelines' residual clause survived constitutional scrutiny. *Id.* at 897. After *Beckles*, this Court instructed petitioners subject to the prior standing orders to file any supplemental pleadings by May 26, 2017. Standing Order 4 (Mar. 22, 2017), https://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo4.pdf.

Hammond filed a supplemental § 2255 motion on the new deadline. *See* Def.'s Supp. § 2255 Mot. The Court ordered the government to respond to Hammond's pending motion, Min. Order (dated Sep. 27, 2017), which the government did in November 2017, *see* Gov't's Opp'n Def.'s Mot. Vacate ("Gov't's Opp'n"), ECF No. 30. Four months later, Hammond filed a reply in support of his motion to vacate. Def.'s Reply Mot. Vacate ("Def.'s Reply"), ECF No. 32. He supplemented the reply five days later to notify the Court of his exemplary record while incarcerated. Def.'s Supp. Reply Mot. Vacate, ECF No. 33.

After Hammond's reply, the Supreme Court struck down 18 U.S.C. § 16(b) as unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018). Section 16(b), which provided a federal definition of "crime of violence" that resembled the ACCA's residual clause, was incorporated into the Immigration and Nationality Act to determine which individuals were subject to removal. *Id.* at 1210–11. *Dimaya* prompted a second supplement from Hammond. Def.'s Second Supp. Reply. Mot. Vacate, ECF No. 34. Then, after the Seventh Circuit issued a ruling in *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018), which addressed many of the same issues raised in Hammond's § 2255 motion, Hammond submitted another supplemental filing. Def.'s Third Supp. Reply Mot Vacate, ECF No. 35.

Hammond's motion to vacate is now ripe for review.

## II.   LEGAL STANDARD

A person in federal custody may petition the court in which he was sentenced for resentencing "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack … ." 28 U.S.C. § 2255(a). A court shall correct a sentence if "the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The petitioner bringing a motion under 28 U.S.C. § 2255 must establish, by a preponderance of the evidence, the denial of a constitutional right. *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

All motions under § 2255 are subject to "the strict time limits that Congress has placed on prisoners seeking collateral relief." *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002);

*see also* 28 U.S.C. § 2255(f). Section 2255 provides several possible one-year periods during which a petitioner may file a motion, including within one year of "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). A motion that is timely under only § 2255(f)(3) must also show that the asserted right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* These are independent conditions limiting the availability of relief. *Dodd v. United States*, 545 U.S. 353, 357–58 (2005).

## III.    DISCUSSION

Hammond's sentence for his firearm offense reflects his two prior convictions for a "crime of violence." *See* PSR ¶¶ 22, 35, 36; U.S.S.G. § 2K2.1(a)(2) (2003). Hammond claims that he is entitled to resentencing because *Johnson* holds that, for defendants sentenced before *Booker*, the Guidelines' residual clause is unconstitutionally vague. Def.'s Supp. § 2255 Mot. at 9–13. While *Johnson* was decided after Hammond's convictions became final, Hammond explains that *Johnson* has been given retroactive effect. *Id.* at 14–17. Finally, Hammond maintains that without the residual clause, his Maryland armed robbery and his federal bank robbery convictions do not qualify as crimes of violence under the Guidelines' two other definitions of crime of violence. *Id.* at 17–36.[5]

In response, the government puts forward multiple arguments for denial of this motion, including that Hammond's guilty plea waived the right to bring the instant § 2255 motion, Gov't Opp'n at 10–11; Hammond's vagueness claim has been procedurally defaulted, *id.* at 11–12; Hammond's motion is untimely, *id.* at 13–19; *Johnson*'s right has not been made

---

[5] Even though Hammond contends that, without the residual clause, his Maryland conviction for robbery with a dangerous weapon is not a crime of violence, Hammond recognizes that *United States v. Redrick*, 841 F.3d 467 (D.C. Cir. 2016), is squarely against him. Still, "for preservation purposes" Hammond argues that the Maryland conviction is not a crime of violence. Def.'s Supp. § 2255 Mot. at 33.

retroactive to cases like Hammond's, *id.* at 20–25; *Beckles* precludes attacking for vagueness the mandatory Guidelines, *id.* at 26–29; and, finally, even if Hammond prevails on these aforementioned arguments, Hammond's predicate convictions are crimes of violence under the Guidelines' elements clause, *id.* at 29–34.

For the reasons that follow, Hammond's vagueness argument is neither untimely nor procedurally defaulted. Moreover, *Johnson* has been made retroactive and enforcing that decision requires invalidating any sentence enhanced through application of the mandatory Guidelines' residual clause. Despite clearing those hurdles, Hammond is not entitled to resentencing on his federal firearm conviction because the prior convictions on which Hammond's enhanced sentence are based qualify as crimes of violence under the Guidelines' elements clause.[6]

## A. Hammond's Motion to Vacate is Not Barred by AEDPA's Procedural Requirements

The government gives two procedural reasons that AEDPA requires denying Hammond's § 2255 motion: (1) timeliness and (2) default. Both are unavailing for the reasons discussed below.

### 1. *Timeliness Under 28 U.S.C. § 2255(f)(3)*

Motions under § 2255 are subject to a "1-year period of limitation." 28 U.S.C. § 2255(f). The limitation period runs from the latest of several possible dates, with only one date available to Hammond: "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3).

---

[6] Considering whether Hammond's guilty plea forecloses this motion is unnecessary because Hammond's motion is denied on the merits.

Prior to 2005, circuit courts were divided as to how to read § 2255(f)(3). *See Dodd v. United States*, 545 U.S. 353, 356 (2005) (referencing "conflict in the Court of Appeals over when the limitation period in [§ 2255(f)(3)] begins to run"). Some courts read § 2255(f)(3)'s limitation period to run from the date that the Supreme Court initially recognized a right, while others read the period to run from the date that the right is made retroactive. *Id.* (summarizing circuit split). *Dodd* ruled that under § 2255(f)(3), "[a]n applicant has one year from the date on which the right he asserts was initially recognized by [the Supreme] Court" to file a motion. *Id.* at 357. The Court reached that conclusion by emphasizing the unique function of § 2255(f)(3)'s two clauses. Timeliness is wholly defined by the first clause, which authorizes motions filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court." *Id.* at 358 ("Dodd's reliance on the second clause to identify the operative date is misplaced."). The second clause, which requires that the "right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," operates to "impose[] a condition on the applicability" of § 2255(f)(3). *Id.* "That means that [§ 2255(f)(3)'s] date … does not apply at all if the conditions in the second clause … have not been satisfied." *Id.* Indeed, "[a]s long as the conditions in the second clause are satisfied so that [§ 2255(f)(3)] applies in the first place, that clause has no impact whatsoever on the date from which the 1–year limitation period in [§ 2255(f)(3)] begins to run." *Id.*

*Johnson* was decided on June 26, 2015 and Hammond's abridged motion was filed on June 20, 2016. *See* Def.'s § 2255 Mot. Thus, Hammond filed his motion within one year of *Johnson.* Nevertheless, the government claims that Hammond's motion is untimely because "the Supreme Court in *Johnson* did not itself recognize the substantive right that defendant now claims entitles him to resentencing." Gov't's Opp'n at 15. Instead, in the government's view,

*Johnson* applies only to the ACCA and Hammond's motion must wait until the Supreme Court itself invalidates sentences pursuant to the mandatory Guidelines' residual clause. *Id.* at 15–16. Hammond counters that "*Johnson* announced the right not to have a sentence fixed by an unconstitutionally vague residual clause," Def.'s Reply at 10, leaving "no doubt that *Johnson* rendered the residual clause of the mandatory Guidelines unconstitutionally void for vagueness," Def.'s Supp. § 2255 Mot. at 13.

While not yet addressed by the D.C. Circuit, other circuit courts have considered whether a § 2255 motion attacking the mandatory Guidelines' residual clause is timely if filed within a year of *Johnson*. The Third, Fourth, Sixth, Ninth and Tenth Circuits have interpreted *Johnson* as strictly limited to the ACCA and rejected petitions that, like Hammond's, challenged the mandatory Guidelines' residual clause, as "untimely." *See United States v. Blackstone*, 903 F.3d 1020, 1028 (9th Cir. 2018) ("As of now, however, Blackstone's motion is untimely."); *United States v. Green*, 898 F.3d 315, 322–23 (3d Cir. 2018) ("We hold that Green's motion is untimely in light of the plain language of 28 U.S.C. § 2255(f)(3)."); *United States v. Greer*, 881 F.3d 1241, 1249 (10th Cir. 2018) ("We agree with the well-reasoned decisions of our sister circuits and therefore hold that Mr. Greer's motion is untimely."); *United States v. Brown*, 868 F.3d 297, 299 (4th Cir. 2017) ("We are thus compelled to affirm the dismissal of Petitioner's motion as untimely under 28 U.S.C. § 2255(f)(3)."); *Raybon v. United States,* 867 F.3d 625, 627 (6th Cir. 2017) ("We conclude that his claim is not timely under 28 U.S.C. § 2255(f)(3)."). The First Circuit, in a slightly different posture, also evaluated the timeliness of a motion like Hammond's as a product of whether *Johnson* extends to the mandatory Guidelines, and "tentative[ly]" ruled

that a motion like Hammond's filed within one year of *Johnson* could not be dismissed as untimely. *Moore v. United States*, 871 F.3d 72, 77, 77 n.3, 80 (1st Cir. 2017).[7]

The Seventh Circuit has also addressed the timeliness of a motion attacking the mandatory Guidelines' residual clause, but jettisoned the analytic approach proposed by the parties and seemingly used by other courts, of assessing the procedural timeliness of the § 2255 petition by examining the scope of the newly recognized right. As the Seventh Circuit aptly observed, debating whether *Johnson* announced a right that applies to an enhanced sentence under the mandatory Guidelines "improperly reads a merits analysis into the limitations period." *Cross v. United States*, 892 F.3d 288, 293 (7th Cir. 2018). Section 2255(f)(3)'s limitation period "runs from 'the date on which the right *asserted* was initially recognized by the Supreme Court.'" *Id.* at 293–94 (emphasis in original). For timeliness, a petitioner "need only claim the benefit of a right that the Supreme Court has recently recognized." *Id.* at 294. Whether a petitioner successfully proves his entitlement is the separate, merits question. *Cross*, 892 F.3d at 294; *see also United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017) ("Whether or not Snyder can ultimately prevail on his motion, he *asserts* the right established in *Johnson*, to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause. Thus, his § 2255 motion, filed within a year of the Court's decision in *Johnson*, is timely under § 2255(f)(3)." (emphasis in original)).[8] Otherwise, § 2255(f)(3)'s use of "asserted" would be superfluous. *Cross*, 892 F.3d at 294.

---

[7]     *Moore* considered only whether a successive § 2255 could be certified under 28 U.S.C. § 2255(h). 871 F.3d at 74. Thus, that court's review of the issue was admittedly "tentative." *Id.* at 80.

[8]     In *Snyder*, the Tenth Circuit considered the timeliness of a *Johnson*-based motion, in which the petitioner claimed that his sentence had been enhanced through application of the ACCA's residual clause, 871 F.3d at 1124–26, and ruled that the district court, by "look[ing] beyond the allegations contained in Snyder's § 2255 motion" and determining timeliness by "whether Snyder was actually entitled to relief under *Johnson*," wrongly applied § 2255(f)(3), *id.* at 1125–26. Snyder's motion was timely independent of whether he actually had been sentenced under the residual clause because his motion "*assert[ed]* the right established in *Johnson*, to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause." *Id.* In so reasoning, the *Snyder* Court

13

This Court agrees with the Seventh Circuit that the timeliness of a § 2255 motion is an independent inquiry from whether the motion seeks to vindicate a newly recognized right applicable to the petitioner.  The courts that have viewed timeliness through the lens of *Johnson*'s scope settled on that approach by emphasizing § 2255(f)(3)'s second clause, which conditions relief under that section to motions claiming rights that have "been newly recognized by the Supreme Court."  *Blackstone*, 903 F.3d at 1025–26; *Green*, 898 F.3d at 320–21; *Greer*, 881 F.3d at 1247; *Brown*, 868 F.3d at 301; *Raybon*, 867 F.3d at 625.  This analysis falls short of grappling with *Dodd*, which made clear that timeliness under § 2255(f)(3) is exclusively a function of that provision's first clause: when "the right asserted was initially recognized by the Supreme Court."  *Dodd*, 545 U.S. at 358 ("Dodd's reliance on the second clause to identify the operative date is misplaced."); *id.* ("As long as the conditions in the second clause are satisfied so that [§ 2255(f)(3)] applies in the first place, that clause has no impact whatsoever on the date from which the 1–year limitation period in [§ 2255(f)(3)] begins to run.").  Injecting into the timeliness analysis whether a right has in fact been newly recognized emphasizes the wrong clause.

Focusing on only the first clause, Congress ran the limitation period from when "the right *asserted* was initially recognized by the Supreme Court."  28 U.S.C. § 2255(f)(3) (emphasis

---

endorsed the same methodology the Seventh Circuit employed.  Nevertheless, in *United States v. Greer*, 881 F.3d 1241 (10th Cir. 2018), another panel of the Tenth Circuit subsequently ruled that a motion like Hammond's was untimely after tethering the timeliness analysis to whether *Johnson* in fact required granting the petitioner's motion, *id*. at 1249.  Despite the cases' analytic inconsistencies, *Greer* did not overrule *Snyder*.  Rather, *Greer* distinguished *Snyder* as a case that "raised a factual question about which clause of the ACCA the sentencing court relied on in enhancing his sentence."  *Id.* at 1246.  By contrast, "[a] factual finding that Mr. Greer was sentenced under the residual clause of the mandatory Guidelines does not end our inquiry but raises a new one.  Such a finding would then require this court to address the constitutionality of the residual clause of the mandatory Guidelines in the first instance on collateral review."  *Id.*  Yet, the new inquiry that *Greer* resisted is precisely what § 2255(f)(3)'s second clause, as *Dodd* explained, requires of lower courts.  *Snyder* correctly recognized that the timeliness inquiry is occupied by only § 2255(f)(3)'s first clause and the nature of the right asserted.  871 F.3d at 1126.  The merits of a petitioner's claim must be addressed separately.  *Id.* at 1128–30.

added).  Of course, "[t]o 'assert' means '[t]o state positively' or '[t]o invoke or enforce a legal right.'  Thus, in order to be timely under § 2255(f)(3), a § 2255 motion need only 'invoke' the newly recognized right, regardless of whether or not the facts of record ultimately support the movant's claim."  *Snyder*, 871 F.3d at 1026 (quoting *Assert*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *see also Cross*, 892 F.3d at 294 ("[Section 2255(f)(3)] does not say that the movant must ultimately *prove* that the right applies to his situation; he need only claim the benefit of a right that the Supreme Court has recently recognized.  An alternative reading would require that we take the disfavored step of reading 'asserted' out of the statute.").  Running the limitation period from when the Supreme Court recognized the "right asserted," as the Seventh Circuit concluded, attaches significance to how a petitioner styles his claim.  If the petitioner seeks the benefit of a right purportedly recognized by the Supreme Court within the preceding year, the petition is timely.

Although timeliness depends on only the right asserted, petitioners will not be able to flood the courts with frivolous assertions of newly recognized rights, as the Tenth Circuit feared. *See Greer*, 881 F.3d at 1245 ("Mr. Greer's interpretation of *Snyder* would require this court to find that, no matter what the underlying claim, any petitioner can avoid AEDPA's clear time limits simply by invoking a right newly recognized by the Supreme Court.").  While a motion will be timely if filed within a year from the date "on which the right asserted was initially recognized by the Supreme Court," this motion may be summarily dismissed if the right has not been, in fact, either "newly recognized by the Supreme Court" or "made retroactively applicable to cases on collateral review."  *Dodd*, 545 U.S. at 358.  That the second clause does not affect timeliness does not mean it has no role to play.

Although, as noted, the D.C. Circuit has not addressed this precise question, assessing timeliness by the right asserted comports with that court's warning not to conflate § 2255's preliminary forms of review with merits review. Indeed, the D.C. Circuit, on review of a motion for certification to file a successive § 2255 motion, which certification is proper only upon a prima facie showing that the motion contains "a new rule of constitutional law," rebuffed the government's argument that, because the petition "relies on an extension of *Graham* [*v. Florida*, 560 U.S. 48 (2010)]," the petition does not contain a new rule of constitutional law. *In re Williams*, 759 F.3d 66, 70 (D.C. Cir. 2014). The Court explained that "the government's argument that we should refuse certification of [petitioner's] *Graham* motion goes to the merits of the motion, asking us in effect to make a final determination of whether the holding in *Graham* will prevail for [petitioner]." *Id.* "[A] review of the merits at [the certification] stage is not required." *Id.*; *see also United States v. Charles Booker*, 240 F. Supp. 3d 164, 169 (D.D.C. 2017) ("As Booker correctly notes, the government's position conflates (1) authorization to file a second or successive motion under Section 2255(h), (2) the time bar under Section 2255(f)(3), and (3) the merits of the motion.").

Hammond asserts that *Johnson* guarantees the right not to have a sentence fixed by a mandatory, but vague, definition of "crime of violence." Def.'s Supp. § 2255 Mot. at 2–3, 9; Def.'s Reply at 10–11. As noted, *Johnson* was decided on June 26, 2015 and Hammond's abridged motion was filed on June 20, 2016. Def.'s § 2255 Mot. Thus, the motion to vacate is timely.

Of course, as *Dodd* explains, Hammond has not met all § 2255(f)(3) requirements just because his motion is timely. Hammond still must establish that the claimed right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

review." 28 U.S.C. § 2255(f)(3); *see also Dodd*, 545 U.S. at 358. In this case, § 2255(f)(3)'s independent conditions sufficiently overlap with the merits that discussion of those conditions is reserved for the merits portion of the opinion.

### 2. *Procedural Default*

The second procedural hurdle that the government constructs is procedural default. "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). Cause for default exists, at a minimum, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel … ." *Reed v. Ross*, 468 U.S. 1, 16 (1984). At least three circumstances demonstrate novelty: (1) the Supreme Court explicitly overrules its own precedent; (2) the Supreme Court changes course on a "longstanding and widespread practice to which [the Supreme Court had] not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) the Supreme Court disapproves of a once-sanctioned practice. *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)). For prejudice, a petitioner "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)) (emphasis and alternations in original). Prejudice analysis assumes the existence of an error. *Id.* at 1145.

Hammond did not appeal his conviction or sentence. Consequently, the government suggests, Hammond has procedurally defaulted the argument he now raises. Gov't's Opp'n at 11–12. Moreover, Hammond cannot establish cause for the default, the government insists, because "[f]utility cannot constitute cause if it means simply that a claim was 'unacceptable to

that particular court at that particular time.'" *Id.* at 12 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Nor can Hammond establish prejudice, according to the government, because the right he asserts has not been made retroactive. *Id.* Hammond responds in two ways. First, procedural default does not apply to sentence-specific challenges. Def.'s Reply at 3–6. Second, cause and prejudice exist here. *Id.* at 6–10.

Hammond marshals no precedent supporting his first argument, but draws from principles that have informed procedural default—primarily, judicial economy and finality—and urges that they are ill fit as reasons against reopening a sentence. *See id.* at 4 ("When an error at sentencing is at issue, however, the problem of finality is lessened, for a resentencing is nowhere near as costly or as chancy an event as a trial." (quoting *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994))); *id.* at 5–6 ("'[T]he cost of correction is so small' because '[a] … resentencing, after all, doesn't require that a defendant be released or retried but simply allows the district court to exercise its authority to impose a legally permissible sentence." (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1334 (10th Cir. 2014))). Resolving Hammond's sweeping proposition is unnecessary because the cause-and-prejudice standard is met and that alone is sufficient.

The constitutional right *Johnson* vindicated was unforeseeable: "[N]o one—the government, the judge, or the appellant—could reasonably have anticipated *Johnson*." *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016). Sure enough, *Johnson* overruled two of the Supreme Court's prior rulings. 135 S. Ct. at 2563 ("Our contrary holdings in *James* [*v. United States*, 550 U.S. 192 (2007)] and *Sykes* [*v. United States*, 564 U.S. 1 (2011)] are overruled."). Thus, Hammond's petition comfortably sits within *Reed*'s first example of novelty. Moreover, the prejudice visited upon Hammond is plain. Hammond was sentenced to 115

months' imprisonment for the firearm conviction, to run consecutively with a 240-month sentence on the armed robbery conviction, based on a mandatory Guidelines range of 92 to 115 months' imprisonment. Judgment, SOR, at 6. Hammond claims that if just one of his prior convictions does not qualify as a crime of violence, his Guidelines range for the firearm conviction is 77 to 96 months' imprisonment, and his overall consecutive sentence should be reduced. Def.'s Supp. § 2255 Mot. at 6, 10. The government does not contest the calculation. Thus, if Hammond's *Johnson* argument about the mandatory Guidelines' residual clause is right, which must be assumed for prejudice purposes, his sentence, in all likelihood, is too long.

Judges on this court, including the undersigned, universally have rejected the government's repeated effort to foreclose through procedural default habeas motions seeking the benefit of *Johnson*. *See, e.g.*, *United States v. Hammond*, No. 92-cr-471 (BAH), 2018 WL 6200897, at *10–11 (D.D.C. Nov. 28, 2018) (Howell, C.J.) (rejecting procedural default argument for post-*Johnson* § 2255 motion); *United States v. West*, 314 F. Supp. 3d 223, 229 n.4 (D.D.C. 2018) (Leon, J.) (same); *United States v. Taylor*, 272 F. Supp. 3d 127, 135–36 (D.D.C. 2017) (Kollar-Kotelly, J.) (same); *United States v. Wilson*, 249 F. Supp. 3d 305, 315 (D.D.C. 2017) (Huvelle, J.) (same); *United States v. Brown*, 249 F. Supp. 3d 287, 293 (D.D.C. 2017) (Sullivan, J.) (same); *Charles Booker*, 240 F. Supp. 3d at 170–71 (Friedman, J.) (same). Nothing about this case justifies different treatment.

In sum, neither of the government's two proposed procedural defects bars review of Hammond's § 2255 motion. This motion to vacate will succeed or fail on its merits, the matter to which the Court now proceeds.

### B.     Hammond's Right to Resentencing

Clearing the procedural hurdles means only that Hammond's motion may be resolved on the merits. To succeed on the merits, Hammond must show (1) that *Johnson* itself requires

invalidating sentences enhanced pursuant to a mandatory application of the Guidelines' residual clause and (2) that the prior convictions subjecting Hammond to an enhanced sentence do not qualify as crimes of violence under either the Guidelines elements clause or enumerated-felonies clause.  As discussed below, Hammond has satisfied only the first of those required showings.

1.  *Does Johnson Apply to the Mandatory Guidelines' Residual Clause?*

Ordinarily, a § 2255 motion may be granted "[i]f the court finds that … the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).  For Hammond, however, relief depends on whether striking down his sentence would enforce the right recognized in *Johnson* or would announce a new right.  That Hammond has such a heavy lift is the consequence of his petition being timely under only § 2255(f)(3), which requires withholding relief from otherwise timely motions unless the petitioner claims the benefit of a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id.* § 2255(f)(3); *see also Dodd*, 545 U.S. at 358.

Arguments about *Johnson*'s scope, which the parties raised as relevant to timeliness, are properly directed to this question.  Hammond maintains that *Johnson* "announced the right not to have a sentence fixed by an unconstitutionally vague residual clause," Def.'s Reply at 10, leaving "no doubt that *Johnson* rendered the residual clause of the mandatory Guidelines unconstitutionally void for vagueness," Def.'s Supp. § 2255 Mot. at 13.  By contrast, the government posits that *Johnson* is about the ACCA, *see* Gov't's Opp'n at 15–16, leaving open

the constitutionality of sentences enhanced under the mandatory Guidelines' residual clause, *id.* at 16.[9]

*Johnson* itself is proper place to begin. In that case, the Supreme Court invalidated sentences enhanced pursuant to the ACCA's residual clause as violative of Due Process because that clause's indeterminacy "denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557. The denial of fair notice occurs whenever a law "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime," and increases punishment based on an indecipherable "serious potential risk" standard." *Id.* at 2558.

Mandatory Guidelines sentences under the residual clause share each fault cited by the Supreme Court, according to Hammond. Def.'s Supp. § 2255 Mot. at 10–12. Like the ACCA, the mandatory Guidelines' fixed sentences. *Id.* at 10. Additionally, the mandatory Guidelines implicate *Johnson*'s twin concerns. *Id.* at 11–12. Hammond is right on each point. First, the mandatory Guidelines had the force of law. *Booker*, 543 U.S. at 233–34. Second, the mandatory Guidelines' residual clause assessed risk against the hypothetical ordinary case. *United States v. Sheffield*, 832 F.3d 296, 313 (D.C. Cir. 2016) ("[W]e apply the ACCA standard to determine whether an offense qualifies as a crime of violence under section 4B1.2" (quoting *In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008))). Third, the mandatory Guidelines enhanced sentences when the past crime posed "serious potential risk," language identical to the ACCA's unworkable standard. *See id.* at 312; *see also Cross*, 892 F.3d at 299 (ruling that the same faults identified in *Johnson* "inhere in the residual clause of the guidelines"); *Moore*, 871 F.3d at 82

---

[9]       The government also argues that even if *Johnson* extends beyond the ACCA, *Johnson*'s right has not been made retroactive to non-ACCA cases. Gov't's Opp'n at 20–25. Yet, in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court made *Johnson* retroactive. Although the government casts *Welch*, like *Johnson*, as limited to the ACCA, *see* Gov't's Opp'n at 8, 19, *Welch* ruled that "*Johnson* is thus a substantive decision and so has retroactive effect." 136 S. Ct. at 1265. Therefore, *Welch* reaches as far as *Johnson*. Analyzing whether *Welch* applies to Hammond is no different than analyzing whether *Johnson* applies to Hammond.

("Although the residual clause in the pre-*Booker* guidelines is not quite ACCA … it is not clearly different in any way that would call for anything beyond a straightforward application of *Johnson*."). Thus, *Johnson* completes all the relevant constitutional legwork.

Still, the government argues that *Johnson*, which makes no mention of the Guidelines, is ACCA specific. Gov't Opp'n at 15. Noting the absence of a Guidelines reference in *Johnson* featured in the analysis of four of the circuits that denied a motion like Hammond's.[10] *See Blackstone*, 903 F.3d at 1026–27 ("Neither *Johnson* nor *Welch* mentioned the mandatory or advisory Sentencing Guidelines."); *Greer*, 881 F.3d at 1247 ("[N]othing in *Johnson* speaks to the issue."); *Brown*, 868 F.3d at 302 (" *Johnson* dealt only with the residual clause of ACCA—a federal enhancement statute … . *Johnson* did not discuss the mandatory Sentencing Guidelines' residual clause at issue here … ."); *Raybon*, 867 F.3d at 630 (" *Johnson*[]'s holding was limited to the ACCA and did not extend to other legal authorities such as the Sentencing Guidelines." (internal quotation marks omitted)). *Johnson*'s silence as to the Guidelines, however, is unremarkable. The constitutional question came to the court packaged as an ACCA case. Commenting on the mandatory Guidelines would have been a departure from the context of the case. Yet, § 2255(f)(3) speaks in terms of rights. Congress presumably used "right" "because it

_____

[10]     Two of those circuits—the Ninth and Tenth—also expressed leeriness of running afoul of the Supreme Court's repeated admonitions that lower courts must not "determin[e] what rights have been recognized under AEDPA." *Blackstone*, 903 F.3d at 1026 (citing *Lopez v. Smith*, 135 S. Ct. 1 (2014); *Nevada v. Jackson*, 569 U.S. 505 (2013)); *see also Greer*, 881 F.3d at 1248 ("To entertain such an argument would undermine Congress's intent in passing AEDPA and the 'interests of comity and finality' underlying federal habeas review." (quoting *Teague*, 489 U.S. at 308)). Yet, each rebuke those circuits cite enforced 28 U.S.C. § 2254(d)(1)'s limitation of federal relief to cases in which a state court unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States." *See Lopez*, 135 S. Ct. at 3–4; *Jackson*, 569 U.S. at 508–09; *Teague*, 489 U.S. at 308. Strict enforcement of what has been "clearly established" for § 2254 is necessary to "prevent[] defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a presumption that state courts know and follow the law." (internal quotation marks omitted)). These principles "of federalism and comity," animating interpretations of § 2254, have limited relevance to § 2255.

recognizes that the Supreme Court guides lower courts not just with technical holdings but with general rules that are logically inherent in those holdings … ." *Moore*, 871 F.3d at 82.

Indeed, both in and since *Johnson*, the Supreme Court has illustrated that *Johnson* is not ACCA specific. A dissenting opinion in *Johnson* critiqued the Court's decision for striking the ACCA's residual clause when "[t]here are scores of federal and state laws that employ similar standards." *Johnson*, 135 S. Ct. at 2577 (Alito, J., dissenting). Had *Johnson* been limited to ACCA, the majority's easy response to this criticism could have been to say so. Instead, the response to the dissent's worry that the Court's broad rule placed in constitutional doubt "dozens of federal and state criminal laws," which rely on phrases like "substantial risk," was that not all such laws required gauging risk against imagined crimes and not all such laws injected uncertainty into what constituted "substantial risk" by giving four vastly different examples of crimes that meet the threshold—a reference to the enumerated-felonies clause—as the ACCA did. *Johnson*, 135 S. Ct. at 2561.

Then, in *Beckles*, the Supreme Court summarized *Johnson*'s rule as forbidding "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Beckles*, 137 S. Ct. at 892. That rule applies to vague laws that "fix the permissible sentences for criminal offenses." *Id.* By invaliding the ACCA's residual clause, *Johnson* simply "applied the vagueness rule to a statute fixing permissible sentences." *Id.* *Beckles* reached a different conclusion for the current Guidelines not because of the shift from the ACCA to the Guidelines, but because of the shift from laws that bind to standards that guide. The advisory Guidelines did not trigger "the twin concerns underlying vagueness doctrine" because "they merely guide the district courts' discretion." *Id.* at 894.

In *Dimaya*, the Supreme Court considered a constitutional challenge related to the interplay of immigration and criminal law. Under 8 U.S.C. § 1227(a)(2)(A)(iii), non-citizens are deportable if convicted of an "aggravated felony." Aggravated felonies include crimes of violence "as defined in section 16 of Title 18." 8 U.S.C. § 1101(a)(43)(F). In turn, § 16 defines crime of violence to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Despite textual differences, and the case's immigration valence, in *Dimaya* the Supreme Court held that § 16(b) suffered from the same constitutional defect as the ACCA's residual clause. 138 S. Ct. at 1210.

The Supreme Court's reasoning in reaching that holding is instructive. Section 16(b)'s residual clause, the Court wrote, combined the same two features that made the ACCA's residual clause "constitutionally problematic." *Id.* at 1213. Thus, the Supreme Court wrote, "*Johnson* effectively resolved the case now before us." *Id.* The ensuing analysis reads like a book report on *Johnson*. Indeed, Section III of *Dimaya*, the heart of the Court's opinion, cites no case other than *Johnson*. *See id.* at 1213–16. To respond to dissenting opinions, the Court simply referred to *Johnson*. *See id.* at 1214 n.3 ("*Johnson* also anticipated and rejected a significant aspect of Justice Thomas's dissent in this case. … "); *id.* at 1215 n.4 ("The Chief Justice's dissent makes light of the difficulty of identifying a crime's ordinary case. In a single footnote, the Chief Justice portrays that task as no big deal: Just eliminate the 'atypical' cases, and (presto!) the crime's nature and risk are revealed. … That rosy view—at complete odds with *Johnson*— underlies his whole dissent … ."); *id.* at 1216 ("For anyone who has read *Johnson*, [Justice Thomas's dissent] will ring a bell"). Section 16(b) could be found constitutional only by "refusing to acknowledge one of the two core insights of [*Johnson*]." *Id.* at 1215 n.4. Section

16(b) was found unconstitutional not by extension of *Johnson* but by enforcement of *Johnson*. If the rest of the opinion had not already made that point clear, *Dimaya* concluded that, "*Johnson* tells us how to resolve this case." *Id.* at 1223. Surely if the Supreme Court considered the question presented in *Dimaya* a matter of enforcing *Johnson*, the same is true here. The distance between *Dimaya* and *Johnson* is far greater than the distance between this case and *Johnson*.

Hammond's comparison to retroactivity law drives home that his motion does not seek to establish a new rule but only to enforce the new rule already articulated in *Johnson*. As Hammond notes, Def.'s Reply at 12, "the retroactivity of [the Supreme Court's] criminal procedure decisions turn on whether they are novel." *Chaidez v. United States*, 568 U.S. 342, 347 (2013). Applying this standard, the Supreme Court has explained that "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (quoting *Teague*, 489 U.S. at 301) (emphasis in original). Conversely, "a case does *not* 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." *Id.* at 347–48 (quoting *Teague*, 489 U.S. at 307) (emphasis and alternations in original). In practice, then, a court does not create a new rule if it only applies a "general standard to yet another factual situation." *Id.* at 348–49. Bringing that framework to Hammond's case, *Johnson* articulated a new rule that Hammond merely asks to be applied to a materially indistinguishable circumstance, simply swapping the ACCA's residual clause for its mandatory Guidelines' parallel. Def.'s Reply at 18.[11]

---

[11] Although new rules are not usually retroactive, *Johnson* was given retroactive effect because it fit one of the exceptions to the default rule. *Welch*, 136 S. Ct. at 1265 ("*Johnson* is … a substantive decision and so has retroactive effect under *Teague* in cases on collateral review.").

The government, as was true for the five circuits finding a petition like Hammond's untimely, cites Justice Sotomayor's concurrence in *Beckles*, *see* 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring), in which she wrote that, "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*] … may mount vagueness attacks on their sentences." *See* Gov't's Opp'n at 9–10; *Blackstone*, 903 F.3d at 1027; *Green*, 898 F.3d at 320; *Greer*; 881 F.3d at 1244; *Brown*, 868 F.3d at 302; *Raybon*, 867 F.3d at 629–30. Placing such weight on purportedly "open" questions framed by a concurring or dissenting Justice in determining what rights the Supreme Court has recognized, might give those rights radically different shape. *Cf. Cross*, 892 F.3d at 288 ("As a lower court, we are required to follow the Court's precedents until the Court itself tells us otherwise. Unless and until a majority of the Court overrules the majority opinions in *Johnson* and *Dimaya*, they continue to bind us."). In any event, ascribing Justice Sotomayor's footnote dispositive significance is unavailing here given how the *Johnson* majority responded to the dissent's concerns about the decision's implications for similar laws and the Court's later opinion in *Dimaya*.

Next, the government argues that *Johnson* cannot apply here because, as *Beckles* exhibits, the Guidelines—mandatory or advisory—are not subject to a vagueness challenge. Gov't's Opp'n at 26–29.[12] Even sentences imposed under mandatory Guidelines, the government reasons, differ from the ACCA because the Guidelines always "operate within the statutory sentencing regime of the offenses of conviction" and an unconstitutional Guidelines calculation "would not alter the statutory boundaries for sentencing set by Congress for the crime." *Id.* at 27

---

[12] Prior to *Beckles*, the government had conceded that even the advisory Guidelines' residual clause was unconstitutionally vague. Gov't's Opp'n at 18–19.

(quoting *In re Griffin*, 823 F.3d 1350, 1355 (11th Cir. 2016)).  By contrast, the ACCA "is a federal statute that alters the statutory sentencing range for a crime."  *Id.* at 28.  While the government, echoing the Eleventh Circuit, is correct that a career offender sentence under the mandatory Guidelines could never exceed a statutory maximum, that argument overlooks the mandatory Guidelines' effect on the sentencing floor.  Setting a mandatory minimum, no less than setting a mandatory maximum "fix[es] the permissible sentences for criminal offenses."  *Beckles*, 137 S. Ct. at 892.  Indeed, "[i]t is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. … And because the legally prescribed range *is* the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty."  *Alleyne v. United States*, 570 U.S. 99, 112 (2013); *see also id.* at 116 ("[T]here is no basis in principle or logic to distinguish between facts that raise the maximum from those that increase the minimum.").

Moreover, the government continues, the mandatory Guidelines did not function as a law because even "[u]nder the pre-*Booker* Guidelines, courts had authority to depart from the prescribed range in exceptional cases."  Gov't's Opp'n at 29 (citing U.S.S.G. §§ 4A1.3, 5K2.0).  The government's argument ignores *Booker*, which ruled that although the mandatory Guidelines were not statutes, the Guidelines still were "binding on judges" and imbued with "the force and effect of laws."  *Booker*, 543 U.S. at 234.  While sentencing judges had some authority to depart from the mandatory Guidelines, "the availability of a departure in specified circumstances does not avoid the constitutional issue."  *Id.* at 234.[13]  Of course, the constitutional issue arose only because the Guidelines were mandatory.  *Id.* at 233.

---

[13]  Notably, "even statutory minimum sentences are not exempt from departures, if, for instance, the government files a substantial-assistance motion, 18 U.S.C. § 3553(e), or the court finds that the defendant is entitled to the statutory safety valve, *id*. § 3553(f)."  *Cross*, 892 F.3d at 306.

Finally, Hammond persuasively asserts that if § 2255(f)(3) requires defendants to wait until the Supreme Court takes a case, which is indistinguishable from a defendant's, defendants will sit on ripe and known claims.  Def.'s Reply at 25–26.  Such a result would be at odds with AEDPA's statute of limitation, which prioritizes finality and expedient resolution of meritorious claims.  *See Mayle v. Felix*, 545 U.S. 644, 662 (2005) ("Congress enacted AEDPA to advance the finality of criminal convictions."); *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (assessing Federal Rule of Civil Procedure 15's applicability to habeas petitioners in light of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions").

*Johnson*'s rule—the right not to have a sentence fixed by an indeterminate and wide-ranging residual clause—instructs that a mandatory Guidelines sentence enhanced through application of the residual clause is unconstitutional.  Hammond's § 2255 motion does not ask the Court to articulate a new rule of constitutional law, just to enforce a rule already established.

### 2. *Is Hammond still a career offender?*

Although the mandatory Guidelines' residual clause is unconstitutionally vague, Hammond's enhanced sentence is constitutional if his Maryland conviction for armed robbery with a deadly weapon and his federal bank robbery conviction satisfy either of the Guidelines' two other definitions of crime of violence.  Indeed, as Hammond concedes, *United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016), resolves that the Maryland conviction meets the elements clause's definition of crime of violence.  Def.'s Supp. § 2255 Mot. at 33.  Thus, the Court's analysis is limited to whether Hammond's federal bank robbery conviction, under 18 U.S.C. § 2113(a), remains a qualifying crime of violence.

18 U.S.C. § 2113(a) provides that:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

Section 2113(a) appears to be divisible, which is to say the statute describes distinct crimes. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (explaining meaning of divisible statute); *see also United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018) ("[Section] 2113(a) does not contain one indivisible offense. Instead, it contains at least two separate offenses, bank robbery and bank extortion."); *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) ("Section 2113(a) seems to contain a divisible set of elements … ."). Section 2113(a)'s divisibility might, in some cases, require review of "a limited class of documents … to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. Such review is not necessary here because, although neither party is explicit, each treats Hammond to have been convicted of taking property "by force and violence, or by intimidation."

*b) The Categorical Approach to Crimes of Violence*

The government claims that Hammond's bank robbery conviction under § 2113(a) is a crime of violence under the elements clause, which defines crime of violence to include "any offense … that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (2003). Courts employ the "categorical

approach" to assess whether a prior conviction fits that definition.  *United States v. Brown*, 892 F. 3d 385, 402 (D.C. Cir. 2018).  In other words, the "analysis looks only to the elements of the crime to determine whether, by its terms, commission of the crime inherently (*i.e.*, categorically) requires" force.  *Id.*  Force in this context "means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original); *see also Brown*, 892 F.3d at 402 (applying *Curtis Johnson*'s definition of "force" to the Guidelines' elements clause).  Thus, "[i]f it is possible to commit the crime without the use, attempted use, or threatened use of violent force, the offense-level enhancement does not apply, regardless of whether the defendant's actual conduct in perpetrating the offense would individually qualify."  *Brown*, 892 F.3d at 402 (citing *Mathis*, 136 S. Ct. at 2249).  Moreover, the Supreme Court has interpreted 18 U.S.C. § 16(a), a provision nearly identical to the Guidelines' elements clause, to require a mental state (or, a *mens rea*) for the use of force that is more than "negligent or merely accidental."  *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).

Against this backdrop, Hammond makes two arguments for why his conviction under § 2113(a) is not categorically a crime of violence.  First, the crime can be committed without the use, attempted use, or threatened use of *violent* force.  Second, the crime can be committed without the *intentional* use, attempted use, or threatened use of violent force.  Those arguments are taken in turn.

> c) *Does 18 U.S.C. § 2113(a) Require the Threatened Use of Violent Force?*

Hammond contends that because § 2113(a) prohibits takings by "intimidation," federal bank robbery can be accomplished without even the threatened use of violent force.  Def.'s Supp. § 2255 Mot. at 30.  Intimidation, by Hammond's account, "occurs when 'an ordinary person in

the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts." *Id.* (quoting *United States v. Woodrup*, 86 F.3d 359, 364 (4th Cir. 1996) (emphasis and alteration in original)). Conduct that reasonably communicates a threat of bodily harm, Hammond maintains, is distinct from conduct that threatens violent force. *Id.* at 30–31.

Yet, every circuit court but the D.C. Circuit, which has not addressed the subject, has ruled that intimidation—or conduct reasonably causing fear of bodily harm—is conduct that threatens violent physical force. *See United States v. Ellison*, 866 F.3d 32, 37 (1st Cir. 2017); *United States v. Dykes*, 724 F. App'x 39, 45 (2d Cir. 2018); *United States v. Wilson*, 880 F.3d 80, 84–85 (3d Cir. 2018); *United States v. McNeal*, 818 F.3d 141, 154 (4th Cir. 2016); *United States v. Brewer*, 848 F.3d 711, 715–16 (5th Cir. 2017); *United States v. McBride*, 826 F.3d 293, 295–96 (6th Cir. 2016); *United States v. Campbell*, 865 F.3d 853, 856, 857 (7th Cir. 2017); *United States v. Harper*, 869 F.3d 624, 626–27 (8th Cir. 2017); *United States v. Watson*, 881 F.3d 782, 785 (9th Cir. 2018); *United States v. McCranie*, 889 F. 3d 677, 681 (10th Cir. 2018); *In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016).[14] Indeed, "intimidation," as it appears in § 2113(a), "simply means the threat of the use of force" and "the degree of 'force' threatened must be violent force." *McNeal*, 818 F.3d at 154; *accord Ellison*, 866 F.3d at 37; *Wilson*, 880 F.3d at 84–95; *Brewer*, 848 F.3d at 715; *McBride*, 826 F.3d at 296; *Campbell*, 865 F.3d at 856; *Harper*, 869 F.3d at 626–27; *Watson*, 881 F.3d at 785; *McCranie*, 889 F.3d at 680; *In re Sams*, 830 F.3d at

---

[14]     Citing three district court cases from the Western District of Washington, *Doriety v. United States*, No. 16-cv-924 (W.D. Wa. Nov. 10, 2016), *Knox v. United States*, 16-cv-5502, 2017 WL 347469 (W.D. Wa. Jan. 24, 2017), and *Bolar v. United States*, No. 09-cr-293, 2017 WL 1543166 (W.D. Wa. Apr. 28, 2017), Hammond cites a "split" as to "whether bank robbery requires the threat of *violent* force." Def.'s Reply at 34 (emphasis in original). Setting aside that no split exists and that the Ninth Circuit, since issuance of these three cited district court decisions, has ruled that federal bank robbery is a crime of violence, *see Watson*, 881 F.3d at 785, the three cited cases are unpersuasive for the reasons that Judge Bates recently explained when presented with whether § 2113(a) describes a crime of violence, *see United States v. Carr*, 314 F. Supp. 3d 272, 284 n.14 (D.D.C. 2018) (explaining that the cited district court cases, respectively, ignored *United States v. Carter*, 530 U.S. 255 (2000), addressed § 2113(a)'s second paragraph, and imagined unrealistic ways in which a crime might be committed).

1239.  The persuasive reasoning in these circuit decisions presents no reason to depart from their interpretation of "intimidation."

Rather than grappling with the uniform precedent, only some of which post-dates Hammond's briefing, Hammond cites cases which, in his view, exemplify the space between threatening bodily harm and threatening violent force.  Def.'s Supp. § 2255 Mot. at 30–31; Def.'s Reply at 34–35.  Hammond presents appellate cases that sustained convictions under § 2113(a) for conduct such as jumping on a bank counter, opening a cash drawer, and grabbing money, *see United States v. Kelley*, 412 F.3d 1240, 1243 (11th Cir. 2005), twice ordering a teller to put money in a bag, *see United States v. Higdon*, 832 F.2d 312, 313 (5th Cir. 1987), and saying to a teller that "if you want to go to heaven, you'll give me the money," but without making "any sort of movement toward the teller," *see United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003).  Hammond, however, has watered down the facts of those cases.  In *Kelley*, the Eleventh Circuit described the defendant's offense conduct as "slam[ing] onto the teller counter hard enough that [one victim] heard the noise from another room" while a second victim "was within arm's length" of the defendants "as they removed cash."  *Kelley*, 412 F.3d at 1245. There, the victims reasonably perceived a threat of violence.  *Id.*  As for *Higdon*, the Fifth Circuit subsequently considered that case to exemplify that "intimidation in the bank-robbery context is inherently tied to a threatened use of force."  *Brewer*, 848 F.3d at 715.  Specifically, the Fifth Circuit considered the defendant's "insistent demands that the tellers empty their cash drawers" a "scarcely-veiled threat of some unarticulated reprisal."  *Id.* (quoting *Higdon*, 832 F.2d at 315). Moreover, surveillance photos depicted that the defendant had an "aggressive, threatening presence as he lean[ed] over the teller counter and, with his right hand, demand[ed] compliance by his gestures."  *Id.* (quoting *Higdon*, 832 F.2d at 315–16).  In *Higdon*, the facts confirmed the

defendant's implicit threat of violent force.  *Id.*  Likewise, the Eighth Circuit later confirmed that *Yockel* was consistent with the view that "[a] threat of bodily harm requires a threat to use violent force because it is impossible to cause bodily injury without force capable of producing that result."  *Harper*, 869 F.3d at 626.

Beyond the real cases, Hammond hypothesizes ways to communicate a threat of physical harm short of threatening violent force, such as "threatening to poison another, threatening to give someone the flu by coughing on them, or even worse, threatening to expose someone to a deadly disease."  Def.'s Supp. Mot. § 2255 at 33.  These "hypotheticals are too far-fetched to place federal bank robbery outside the ambit of § 4B1.2(a)(1)."  *United States v. Carr*, 314 F. Supp. 3d 272, 283 (D.D.C. 2018); *see also Redrick*, 841 F.3d at 484–85 ("The Supreme Court in other cases applying the categorical approach has cautioned against excessive 'legal imagination.'").

Finally, Hammond draws a parallel between § 2113(a) and Connecticut's third-degree assault statute, which the First Circuit recently reviewed against 18 U.S.C. § 16(a)'s elements clause.  *See Whyte v. Lynch*, 807 F.3d 463 (1st Cir. 2015).  Connecticut's assault statute did not describe a crime of violence even though an element of the crime was the "intent to cause physical injury to another person" because the government offered no precedent that state courts had interpreted "physical injury" to mean anything more than "impairment of physical condition or pain."  *Id.* at 469.  "Common sense, moreover, suggest[ed] there exists a realistic probability that … Connecticut can punish conduct that results in 'physical injury' but not require the 'use of physical force.'"  *Id.  Whyte*, however, is immaterial.  When a federal court determines whether a state conviction meets a federal definition of crime of violence, the federal court must accept the

state's interpretation of the criminal statute. *Id.* at 466–67. How Connecticut defines "intent to cause physical injury to another" says nothing about how to interpret a federal statute.

As every circuit has ruled, intimidation necessitates a threat of violent force.

### d) Does 18 U.S.C. § 2113(a) Meet the Elements Clause's Mens Rea Requirement?

Next, Hammond insists that because federal bank robbery does not require *intentional* intimidation, § 2113(a) criminalizes conduct that can be committed with a less culpable mental state than is required by the Guidelines' elements clause. Hammond's argument fails for several reasons.

In *Carter v. United States*, 530 U.S. 255 (2000), the Supreme Court ruled that 18 U.S.C. § 2113(a), which does not contain an express *mens rea* requirement, is a "general intent" crime. *Id.* at 268. As such, a defendant must have "possessed *knowledge* with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)" to be guilty. *Id.* (emphasis added). Hammond understands the elements clause's definition of crime of violence as applicable only to convictions requiring the *intentional* use of force. Def.'s Supp. § 2255 Mot. at 24–25 (citing *Leocal*, 543 U.S. at 9). *Leocal* construed 18 U.S.C. § 16(a)'s definition of crime of violence, which is nearly identical to the Guidelines' elements clause, to "most naturally suggest[] a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. *Leocal* did not hold, however, that knowledge of the use of force, or threatened use of force, was inadequate. *See Campbell*, 865 F.3d at 857 (recognizing that *Leocal* never held that "general intent crimes could not constitute crimes of violence"). Likewise, none of the circuit cases cited by Hammond, *see* Def.'s Supp. § 2255 Mot. at 25, instruct that a crime of violence must, in all instances, have as an element the intentional use of force. *See United States v. Hernandez-Hernandez*, 817 F.3d 207, 217 (5th Cir. 2016) (ruling that the defendant's prior

34

conviction categorically involved the intentional use of force); *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015) (ruling that the defendant's prior conviction was not a crime of violence because the crime could be committed through accidental use of force); *United States v. Armijo*, 651 F.3d 1226, 1237 (10th Cir. 2011) (ruling that the defendant's prior crime was not a crime of violence because the crime could be committed through reckless use of force); *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992) (considering only whether conspiring to commit a violent felony is equivalent to threatening to use force). Thus, Hammond's argument that, as a matter of precedent, the elements clause's definition of crime of violence excludes crimes that require only the knowing use of force is unfounded.

Hammond offers no principle that justifies excluding from the elements clause's definition of crime of violence those crimes committed through the knowing use of force. Here too, all circuit courts to have considered the question are lined up against Hammond. *See, e.g.*, *Ellison*, 866 F.3d at 39–40; *Wilson*, 880 F.3d at 87–88; *McNeal*, 818 F.3d at 155–56; *McBride*, 826 F.3d at 296; *Campbell*, 865 F.3d at 856; *Watson*, 881 F.3d at 785; *United States v. Horsting*, 678 F. App'x 947, 950 (11th Cir. 2017). Those decisions are persuasive. Indeed, the Supreme Court interpreted § 2113(a) as a general intent crime because that *mens rea* sufficiently "separate[d] wrongful conduct from 'otherwise innocent conduct.'" *Carter*, 530 U.S. at 269 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). *Carter* confirms that including § 2113(a) within the elements clause's definition of crime of violence does not risk enhancing a sentence for the innocent use of force.

Still, Hammond contends that § 2113(a) criminalizes the negligent use of force. Def.'s Supp. § 2255 Mot. at 24–26; Def.'s Reply at 30–34. Hammond deduces as much because a defendant may be found guilty under the statute "even though he did not intend to put another in

fear of injury," "as long as 'an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts.'" Def.'s Supp. § 2255 Mot. at 25, 26 (quoting *United States v. Woodrup*, 86 F.3d 359, 364 (4th Cir. 1996)); *see also* Def.'s Reply at 30 ("This means that 'intimidation' is satisfied under the bank robbery statute whether or not the defendant actually intended the intimidation, as long as an ordinary person in the victim's position reasonably could infer a threat of bodily harm from the defendant's acts." (citing *Kelley*, 412 F.3d at 1244; *United States v. Dawson*, No. 03-cr-410, 2018 WL 1082839, at *3 (D. Or. Feb. 27, 2018))).

Hammond's opening brief fails to cite *Carter*, which is explicit that § 2113(a) is a general intent crime, necessitating that the defendant possessed at least knowledge of his intimidating conduct. *Carter*, 530 U.S. at 268. Indeed, the First Circuit, discussing the same cases that Hammond insists support his conclusion, noted that the underlying rationale for each case ignores *Carter*. *Ellison*, 866 F.3d at 39, 39 n.4. In reply, Hammond acknowledges *Carter*, *see* Def.'s Reply at 32, but reasons that because intimidation is judged from the objective victim's vantage point, the knowing use of force is no different than the negligent use of force. Def.'s Reply at 30–33. This reasoning is not persuasive. As Judge Bates recently explained, "a jury cannot peer into a defendant's mind to determine what he knew at the time of a robbery." *Carr*, 314 F. Supp. 3d at 280–81. Thus, a defendant's mental state is inferred "from the surrounding circumstances—including whether his actions were sufficient to intimidate a reasonable bank teller." *Id.* at (citing *Horsting*, 678 F. App'x at 950). Application of "an objective standard to determine whether a jury could have inferred knowledge from the defendant's actions does not *ipso facto* reduce the applicable mental state requirement to recklessness or negligence." *Id.* Indeed, the Model Penal Code reflects that different types of conduct bespeak different mental

states.  *Id.* at 281–82 (explaining that under Model Penal Code § 2.02(d) "a person acts with criminal negligence when she 'should be aware of a substantial and unjustifiable risk that [an element of an offense] exists or will result from [her] conduct'" but that under § 2.02(b) "a person acts knowingly with respect to a result when she 'is aware that it is practically certain that [her] conduct will cause [that] result'").

Finally, contrary to Hammond's argument, Def.'s Reply at 32–33, *Elonis v. United States*, 135 S. Ct. 2001 (2015), does not require a different result.  In *Elonis*, the Supreme Court reviewed a conviction under 18 U.S.C. § 875(c), which outlaws transmitting in interstate commerce "any threat to kidnap any person or any threat to injure the person of another," but which, like § 2113(a), does not expressly provide a *mens rea* requirement.  *Elonis*, 135 S. Ct. at 2008.  The district court had instructed the jury to convict if the defendant "intentionally ma[de] a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted" as a threat.  *Id.* at 2007.  Yet, the Supreme Court vacated the conviction because the district court's instruction, by focusing "solely on how [the defendant's statements] would be understood by a reasonable person" had "reduce[d] culpability on the all-important element of the crime to negligence" and eliminated "the conventional requirement for criminal conduct—*awareness* of some wrongdoing."  *Id.* at 2011 (quoting *Staples v. United States*, 511 U.S. 600, 606–07 (1994)).

On the path to that holding, however, the Supreme Court specifically distinguished § 2113(a) as a statute that, unlike § 875(c), did not require proof of intent to avoid the risk of criminalizing negligent conduct.  *Id.* at 2010.  For § 2113(a), "the concerns underlying the presumption in favor of scienter are fully satisfied" by "a general requirement that a defendant *act* knowingly" because "a forceful taking—even by a defendant who takes under a good-faith

claim of right—falls outside the realm of … 'otherwise innocent' conduct." *Id.* (quoting *Carter*, 530 U.S. at 269–70). On the other hand, a statute such as § 875(c), or "a statute similar to Section 2113(a) that did not require forcible taking," must impose an intent requirement to avoid "the risk of punishing seemingly innocent conduct." *Id.* (quoting *Carter*, 530 U.S. at 269). Indeed, for such a statute, "the crucial element separating legal innocence from wrongful conduct" is the threatening nature of the communication. *Id.* at 2011 (quoting *X-Citement Video, Inc.*, 513 U.S. at 73). Thus, *Elonis*'s reasoning is explicitly limited to statutes that criminalize pure threats. *See Wilson*, 880 F.3d at 86 ("Wilson's attempt to extend *Elonis*'s reasoning to § 2113(a) is misguided."); *United States v. Williams*, 864 F.3d 826, 829–30 (7th Cir. 2017) ("The reasoning of *Elonis* does not extend to bank robbery, where the concerns about innocent conduct and free speech in *Elonis* do not apply. Williams's argument regarding intent is imported from, and better suited to, statutes criminalizing pure threats. Bank robbery is caused by intentional acts, not by negligence or accidental conduct.").

Section 2113(a) requires that the defendant had at least knowledge that his conduct would be intimidating. The Guidelines' elements clause demands no more.

***

*Johnson* prohibits enhancing any sentence based on the mandatory Guidelines' residual clause. Hammond's prior Maryland conviction for armed robbery with a deadly weapon and federal conviction for bank robbery, however, are crimes of violence under the Guidelines' elements clause because each requires at least the knowing use, attempted use, or threatened use of violent physical force. Thus, Hammond's sentence does not implicate the rule enunciated in *Johnson*, and is constitutional.

## IV. CONCLUSION

For the foregoing reasons, Hammond's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is denied.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.


Date: December 7, 2018

                                                 _____

                                                 BERYL A. HOWELL
                                                 Chief Judge