UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Case No. 1:02-CR-294-BAH |
| | ) | |
| PAUL HAMMOND | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO THE COMPASSIONATE RELEASE STATUTE 18 U.S.C. § 3582(c)(1)(A)(i)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to defendant Paul Hammond's emergency motion to reduce sentence pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i) [Dkt. 44].

## BACKGROUND

On April 15, 2002, armed with a handgun, defendant and an accomplice robbed a clothing store in the 700 block of Florida Ave., N.W., Washington, D.C. They held the business owner at gunpoint, and when he grabbed the gun, they beat him with a bottle and clothing rack. Defendant and his accomplice fled, but defendant was stopped—with the gun in his waistband—shortly afterward.

In August 2003, defendant pled guilty to one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of armed robbery with a firearm, in violation of D.C. Code §§ 22-2901, 3202.  The United States dismissed the remaining charges against defendant, including assault with intent to kill while armed.  The parties agreed that "Section 2K2.1 of the Guidelines [will] apply to determine the defendant's offense level," and that his base offense level would be 24 because he committed his instant crime after sustaining at

least two felony convictions for a crime of violence or controlled substance offense. Those prior convictions, as reflected in defendant's Presentence Investigation Report, included a 1975 conviction for federal bank robbery (D. Md.) and a 1981 conviction for robbery with a deadly weapon (handgun) (Maryland Circuit Court). Based on his two prior convictions, defendant's base level was set at 24 under U.S.S.G. § 2K2.1(a)(2). After adjustments, defendant's total offense level was 26; his criminal history category was IV; and his PSI reflected a guideline range of 92–115 months' imprisonment for the § 922(g) count. At sentencing on December 18, 2003, the Honorable Henry Kennedy imposed sentence of 115 months' imprisonment on defendant's firearms offense, as well as a consecutive sentence of 240 months' imprisonment for the armed robbery. Defendant did not note an appeal.

On June 20, 2016, and May 26, 2017, the defendant filed a motion to vacate judgment pursuant to 28 U.S.C. § 2255 and a supplemental motion based upon the U.S. Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015) [Dkt. Nos. 24, 27]. On December 7, 2018, this Court denied the defendant's motion [Dkt. 38]. The defendant noted a timely appeal and that appeal is pending before the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").

## THE LAW

Section 3582(c) provides, in relevant part:

The court may not modify a term of imprisonment once it has been imposed except that—
(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of

>    probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>       (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . . .
>
>    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

Section 1B1.13 of the United States Sentencing Commission's Guidelines Manual specifically provides the policy statement relating to Section 3582(c), and Application Note 1 further delineates sufficient "Extraordinary and Compelling Reasons." *See* U.S.S.G § 1B1.13, app. note 1 (the defendant is suffering from a terminal illness or serious physical or medical condition, is at least 65 years old, has served a least 75 percent of his term of imprisonment or seeking release based upon family circumstances). Application Note 1 provides three specific reasons that are considered "extraordinary and compelling," as well as a catchall provision recognizing as "extraordinary and compelling" any other reason as previously "determined by the Director of the Bureau of Prisons." *Id*. Regarding the catchall provision set forth in Application Note 1, subpart D, at least one court has decided that the First Step Act brings within the court's purview the ability to decide what reasons qualify as extraordinary and compelling, pursuant to subpart D, beyond the specific reasons identified in Application Note 1(A)–(C). *See United States v. Cantu*, Crim. No. 1:05-CR-458-1, --- F. Supp. 3d ----, 2019 WL 2498923, at *3-5 (S.D. Tex. June 17, 2019) ("[T]he Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

## **ARGUMENT**

The defendant now moves this Court to reduce his sentence pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). He is currently incarcerated at CI Rivers. He is 75

years old.  His projected release date is June 30, 2027.  The defendant requests that he be granted compassionate release in light of his advanced age and diagnosis of prostate cancer, which he states put him at increased risk of death or serious illness from the coronavirus (COVID-19).  The defendant states that he meets the criteria for elderly inmates with medical conditions in the BOP's Compassionate Release Program Statement, 5050.50(4)(b), and the Sentencing Commission's policy statement for compassionate release at U.S.S.G. §1B1.13(1)(A).  The defendant asks the Court to modify his sentence by making his two sentences concurrent, rather than consecutive, which will result in his immediate release.  The defendant also states that he should be immediately released "from a correctional institution ill-equipped to handle a pandemic."

As an initial matter, the government agrees that this Court may rule on the defendant's motion, although this case is on appeal before the D.C. Circuit.  Generally, Federal Rule of Appellate Procedure 4(b)(3) deprives a district court of jurisdiction once an appeal has been filed and therefore a district court cannot grant a motion without a remand.  However, Federal Rule of Criminal Procedure 37 allows a district court to consider the motion and either (a) deny it; (b) defer consideration; or, (c) state that it would grant the motion if the court of appeals remands for that purpose or state that the motion raises a substantial issue.

Second, the defendant asserts that he has exhausted his administrative remedies for seeking compassionate relief from the Bureau of Prisons ("BOP").  According to BOP's records, the defendant has not exhausted his administrative remedies.[1]  Nevertheless, the defendant is permitted to file this motion with the Court under 18 U.S.C. § 3582(c)(1)(A) because more than 30 days has elapsed since the Warden's receipt of the defendant's request.

---

[1] The defendant filed a request with the prison warden for compassionate release based on his age and health conditions. *See* Defendant's Ex. A.  The warden denied the request on July 16, 2019 on the basis that the defendant was serving a sentence for a D.C. Code offense and thus compassionate release under § 3582(c)(1)(A) was unavailable to him. *See* Defendant's Ex. B.

4

The defendant's motion should be summarily denied because he is not eligible for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He is serving an aggregate sentence of 355 months – 115 months of which is attributable to his federal offense and 240 months of which is attributable to his D.C. Code offense. According to BOP personnel who handle sentence computation issues, the defendant has already served his entire federal sentence and he is now serving the D.C. Code portion of his sentence. This is the reason the Warden denied his request in the first instance. Consequently, the Court cannot order compassionate release because 18 U.S.C. § 3582(c)(1)(A) does not apply to prisoners such as the defendant who are serving sentences for D.C. Code offenses. See 28 C.F.R. § 571.64; BOP Program Statement 5050.50 Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), Section 571.64 (the Bureau of Prisons has no authority to initiate a request under 18 U.S.C. § 3582(c)(1)(A) on behalf of D.C. Code offenders confined in federal institutions).

In addition, the defendant does not meet the Sentencing Commission's policy statement for compassionate release at U.S.S.G. §1B1.13(1)(A) because he has not served 75 percent of his sentence and he is not seeking compassionate release based upon family circumstances. In assessing the merits of defendant's motion for compassionate release under Section 3582(c)(1)(A), the Court's ultimate decision must be "consistent with applicable policy statements issued by the Sentencing Commission." Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples…." Accordingly, the policy statement of the Commission is binding on the court. *See*

*Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[2]

Even if the Court were to find that the defendant is eligible for compassionate release, a reduction should not be granted.  In determining whether to modify an imposed term of imprisonment based upon compassionate release, the Court may not modify a sentence unless its finds, after considering the factors set forth in Section 3553(a), that "extraordinary and compelling reasons warrant such a reduction."  Section 3582(c)(1)(a)(i).  Here, and as noted above, defendant and an accomplice were involved the armed robbery of a business owner and they also assaulted their victim with a bottle and clothing rack.  At the time he committed this offense, the defendant had two prior convictions for robbery – a bank robbery and another armed robbery.  The undersigned has been unable to contact the victim in this case because the government's files are located at the Federal Records Center, which is closed.

The possibility that the defendant might, while incarcerated, contract a disease that is also present in the community at large does not constitute extraordinary circumstances.  We do not wish to minimize the concern or the risk, but "BOP institutions, as a matter of policy and

---

[2] Defendant relies in part on BOP Program Statement 5050.50. This program statement was amended effective January 17, 2019, following passage of the First Step Act.  It replaces the previous program statement, 5050.49, CN-1.  Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the Sentencing Guidelines Section 1B1.13 policy statement. To the extent that the BOP program statement and the Sentencing Guidelines policy statement conflict, the Sentencing Guidelines policy statement—*i.e.*, the source directly authorized by statute—is binding.  An interpretation in the BOP program statement that does not contradict the policy statement, however, is entitled to some weight.  *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).

procedure, have pandemic plans for preparedness in the event of any infectious disease outbreak."[3] The BOP is prepared to deal with pandemics such as the coronavirus, as it has had in place, since at least October 2012, a plan to deal with other pandemics, including Pandemic Influenza, by taking steps such as increased hygiene, "social distancing," and quarantining.[4] The dangers associated with COVID-19 are real, and in response to those dangers, BOP has implemented new measures to prevent potential spread and protect the health and safety of its staff and federal inmates. Specifically in response to the COVID-19 pandemic, BOP has taken aggressive steps to protect inmates' health and to keep COVID-19 outside of its facilities. "[M]aintaining safety and security of [BOP] institutions is [its] highest priority."[5] The BOP began planning for COVID-19 in January 2020, when it established a task force to develop policies in consultation with the CDC. BOP has implemented Modified Operations, including suspending social visits, suspending legal visits (but continuing to allow confidential legal calls), limiting inmate movement, maximizing social distancing, enhanced screening of staff, and continued screening of inmates.[6] Moreover, for inmates who have COVID-19 symptoms, or a temperature greater than 100.4 degrees Fahrenheit, they will immediately be placed in isolation.[7] And on March 24, 2020, BOP

---

[3] *See* "BOP's COVID-19 Response" https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response.

[4] *See* BOP's "Pandemic Influenza Plan" (Oct. 2012), https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

[5] *See* "Updates to BOP COVID-19 Action Plan: Inmate Movement" (Mar. 19, 2020), https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

[6] *See* BOP's "COVID-19 Action Plan: Agency-Wide Modified Operations" (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp.

[7] *See id.*

announced that it would quarantine all newly arriving inmates for fourteen days so as to not introduce the infection within the receiving facility.[8]

In sum, BOP has a plan in place to protect inmates, including the defendant. Further, there is no indication, and the defendant does not allege, that BOP is no longer able to treat his prostate cancer, as BOP has been doing since 2005 when the defendant was first diagnosed with he while incarcerated. If the situation changes, BOP will take action to attempt to protect all inmates, including those, like defendant, who may be more susceptible to adverse results due to age and existing ailments.[9]

WHEREFORE, the government respectfully requests that the Court summarily deny the defendant's motion.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney
D.C. Bar Number 437-437

MARGARET J. CHRISS
Chief, Special Proceedings Division
D.C. Bar Number 452-403


_____/s/_____
PAMELA S. SATTERFIELD
Assistant United States Attorney
Special Proceedings Division
555 4th Street, N.W.
Washington, D.C. 20530
D.C. Bar Number 421-247
Pamela.satterfield@usdoj.gov
202-252-7578

---

[8] *See* "Bureau of Prisons Update on COVID-19" (Mar. 24, 2020), https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf.

[9] As of the filing date of the instant pleading, BOP's website did not show that there are any known COVID-19 cases at CI Rivers.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, this 2nd day of April, 2020, I caused a copy of the foregoing Opposition to be served via ECF on counsel of record.

                                                   /s/
                                        Pamela S. Satterfield
                                        Assistant United States Attorney