# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

PAUL EDWARD HAMMOND,

Defendant.

Criminal Action No. 02-294 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION AND INDICATIVE RULING

Pending before the Court is defendant's emergency motion for compassionate release. Def.'s Emergency Mot. to Reduce Sentence Pursuant to the Compassionate Release Statute 18 U.S.C. § 3582(c)(1)(A)(i) ("Def.'s Mot."), ECF No. 44. Defendant is "75 years old" and "has already served . . . 18 years" of his 355-month sentence. *Id.* at 1. He fears that his advanced age, compounded by his recently resurgent prostate cancer, make him "especially vulnerable to the effects of COVID-19," currently the cause of a worldwide pandemic and national emergency.[1] *Id.* at 21. Defendant asserts that the risk of COVID-19's spread is high in the correctional facility where he is currently detained and that his release is essential to mitigate the "high risk" of his infection. *Id.* at 22. The instant motion was filed while defendant's appeal of this Court's denial of his 2016 motion for habeas relief, under 28 U.S.C. § 2255, remains pending before the Circuit. *See* Notice of Appeal, ECF No. 39; Order (Feb. 1, 2019), ECF No. 42 (issuing defendant a Certificate of Appealability). The parties agree both that defendant's appeal divested this Court of jurisdiction over his case, Def.'s Mot. at 6 (citing FED. R. APP. P. 4(b)(3)); Gov't

---

[1] *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, OFFICE OF THE PRESIDENT OF THE UNITED STATES, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited April 16, 2020).

Opp'n to Def.'s Mot. ("Gov't Opp'n") at 4, ECF No. 46 (same), but that the Court may nonetheless issue a so-called "indicative ruling" stating whether it "would grant the motion if the court of appeals remands for that purpose," Def.'s Mot. at 6 (quoting FED. R. CRIM. P. 37(a)(3)); *see also* Gov't Opp'n at 4 (same).  For the reasons set forth below, defendant's motion would be granted, and his sentence of imprisonment would be reduced to a sentence of time served, if the Circuit were to remand the case to this Court for that purpose.

## I.      BACKGROUND

A thorough description of the facts underlying defendant's incarceration is contained in this Court's prior decision denying his section 2255 motion and need not be repeated.  *See United States v. Hammond*, 354 F. Supp. 3d 28, 33–37 (D.D.C. 2018).  Thus, only those facts pertinent to resolve defendant's instant motion are reviewed.

On August 1, 2003, defendant pled guilty to two counts of a seven-count indictment, *see* Indictment, ECF No. 1: one count of unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and one count of armed robbery with a firearm in violation of D.C. Code §§ 22-2901 and 22-3202.  *See* Plea Agreement at 1, ECF No. 17.  Four months later, on December 18, 2003, he was sentenced to a term of 115 months' imprisonment for his U.S. Code offense and a consecutive term of 240 months' imprisonment for his D.C. Code violation for a total effective sentence of 355 months (29.6 years).  Judgment at 1–2, ECF No. 25.  The defendant did not appeal.[2]

Thirteen years after he began serving his nearly 30-year sentence, in June of 2016, defendant filed a motion to vacate and correct his sentence under 28 U.S.C. § 2255 claiming that intervening Supreme Court caselaw entitled him to a lower sentence.  Def.'s Mot. under 28

---

[2]     This case was reassigned to the undersigned Judge on June 21, 2016, after defendant filed his section 2255 motion.

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, ECF No. 24.  This Court denied that

motion, Order (Dec. 7, 2018), ECF No. 37, and defendant appealed, Notice of Appeal at 1.[3]

On June 21, 2019, while his appeal was pending, defendant requested, by letter to the

Warden of Rivers Correctional Institution ("RCI"), Def.'s Mot., Ex. A, ECF No. 44-2, a

privately-operated prison under contract with the Federal Bureau of Prisons ("BOP"), *CI Rivers*,

FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/ci/riv/ (last visited Apr. 16, 2020),

where the defendant is currently detained, that the Warden "initiat[e] a Motion for

Compassionate Release . . . on his behalf," Def.'s Mot., Ex. A at 1.  Defendant, who was 74

years old at the time and had then already served "roughly 207 months" of his 355-month

sentence, asserted that he met BOP administrative requirements "allowing for the initiation of

[the] request." *Id*. at 1–2.  The Warden, however, disagreed, stating simply that under BOP

regulations, he had "no authority to initiate a request" for compassionate relief "on behalf of . . .

D.C. Code offenders confined in federal institutions."  Def.'s Mot., Ex. B at 1, ECF No. 44-2

(quoting 28 C.F.R. § 571.64).

Defendant asked the Warden to reconsider, explaining that, because he was convicted of

both a federal crime and a D.C. Code violation, "part of [his] total sentence [did] meet the

requirements . . . of the BOP [c]ompassionate release policy."  Def.'s Mot., Ex. C. at 2, ECF No.

44-2.  His request for reconsideration fared no better than his initial request.  The Warden

"determined that [defendant had] not provided compelling circumstances to warrant a

compassionate release" and, moreover, "due to [his] history of violence and current violence,

[his] release would place an undue risk to [sic] the community."  Def.'s Mot., Ex. E at 1, ECF

---

[3]     The defendant was subsequently granted a certificate of appealability ("COA"), making his pending appeal proper.  Order (Feb. 1, 2019); *see also United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C. Cir. 2000) (holding that "Rule 22(b) [of Federal Appellate Procedure] requires initial application in the district court for a COA").

No. 44-2.[4]  According to defendant, he appealed this decision in September 2019, but has heard nothing from BOP officials.  Def.'s Mot. at 5.

Although defendant's initial compassionate release request to the Warden was, by his own admission, not "due to his health," Def.'s Mot., Ex. A at 4, the onset of the international COVID-19 pandemic aroused new concern that his underlying medical conditions might make him especially vulnerable.  Defendant was diagnosed with prostate cancer in 2005, "which was . . . treated by radiation and went into remission."  Def.'s Mot. at 15.  In 2017, however, his cancer returned, resulting in his current "diagnos[is] with advanced prostate cancer."  *Id*. at 16. He is being treated with "androgen deprivation therapies (ADTs)," which entail "severe side effects."  *Id*.  As a result, defendant suffers "severe anemia," "dehydration," loss of appetite, and "drastic retention of fluid in his hands, feet, legs and knees, making mobility difficult."  *Id*. at 17. Defendant asserts that his cancer and the treatment for it leave him with a "weakened immune system," *id*. at 20 (citing UT Southwestern Medical Center, *Common Prostate Cancer Treatments Suppress Immune Response, May Promote Relapse* (Apr. 7, 2016)[5]), which, he claims, makes him "especially vulnerable to the effects of COVID-19," *id*. at 21.

Defendant therefore filed the instant motion requesting that, in light of his advanced age, his vulnerability to the current pandemic and the amount of his sentence he has already served without incident, he be released to "shelter in place at his son's home in Maryland."  *Id*. at 1–2.

## II.   LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow

---

[4]      The Warden's response does not detail what he meant by "current violence" and defendant's lack of any disciplinary record undermines the Warden's brief reference.  *See* Def.'s Supp. to Def.'s Mot., Ex. R at 2 (explaining that defendant "has not received any incident reports since his arrival" at RCI), ECF No. 50-1.

[5]      Available at https://www.sciencedaily.com/releases/2016/04/160407221707.htm.

exceptions." *Freeman v. United* States, 564 U.S. 522, 526 (2011).  As originally enacted, one

such exception, codified in section 3582(c)(1)(A), empowered the BOP Director to "petition the

court for a reduction in . . . sentence" and gave courts the authority to grant those petitions if they

found "that the reduction was justified by 'extraordinary and compelling reasons.'"  S. Rep. 98-

223 at 118; *see also* Pub. L. No. 98-473, Title II, § 212(a)(2).[6]  As amended in the First Step Act

of 2018, Pub. L. No. 115-391, the exception in section 3582(c)(1)(A) is expanded to authorize a

defendant directly to file a motion for such compassionate release with the court after exhausting

"administrative rights to appeal a failure of the Bureau of Prisons to bring a [compassionate

release] motion" on his behalf or he waits at least "30 days" after he delivers his request for

compassionate release to "the warden of [his] facility." 18 U.S.C. § 3582(c)(1)(A).

 In resolving motions for compassionate release, the court may reduce a term of

imprisonment only "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent

that they are applicable," *id.*, and upon making two findings: first, that "extraordinary and

compelling reasons warrant such a reduction," *id*. § 3582(c)(1)(A)(i)[7]; and, second, "that such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission,"

*id*. § 3582(c)(1)(A).[8]

---

[6]      As originally enacted, 18 U.S.C. § 3582 read as follows:

> The Court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, upon motion of the director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission.

Pub. L. No. 98-473, Title II, § 212(a)(2).

[7]      Though not relevant to the instant motion, the court may also reduce a prisoner's sentence if he is "at least 70 years of age" and has served at least 30 years in prison, when BOP has determined "that the defendant is not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)."  18 U.S.C. § 3582(c)(1)(A)(ii).

[8]      The Sentencing Commission is tasked, in its organic statute, with promulgating general policy statements regarding "the sentence modification provisions set forth in section[] . . . 3582(c) of title 18," 28 U.S.C. § 994(a)(2),

The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which was last substantively amended by the Commission on November 1, 2016, applies to motions for reduction of terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A), and provides guidance as to both of the statutorily required findings.  It states that a reduction of a term of imprisonment may be warranted, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," when the court makes three determinations: (1) "extraordinary and compelling reasons warrant the reduction," or the defendant meets certain age and a minimum incarceration period, U.S.S.G. § 1B1.13(1)(A)–(B); (2) the defendant poses no danger to the safety of any other person or the community, id. § 1B1.13(2); and (3) "the reduction is consistent with this policy statement," id. § 1B1.13(3).  The commentary to this policy statement then describes four "circumstances" that satisfy "extraordinary and compelling reasons warrant[ing] the reduction": (1) the medical condition of the defendant, who "is suffering from a terminal illness" or has chronic and "substantially diminish[ed] . . . ability . . . to provide self-care" within the prison environment, id. § 1B1.13, cmt. n.1(A); (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health, after serving at least 10 years or 75 percent of the prison term, "whichever is less," id. § 1B1.13, cmt. n.1(B); (3) "[f]amily [c]ircumstances" of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the defendant's spouse or registered partner "when the defendant would be the only available caregiver for the spouse or registered partner," id. § 1B1.13, cmt. n.1(C); and (4) "[o]ther [r]easons" found by the BOP Director to present an extraordinary and compelling reason "other than, or in combination with," the reasons specified in the policy statement, id. § 1B1.13, cmt. n.1(D).

---

and "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," id. § 994(t).

III.    **DISCUSSION**

The government opposes defendant's request for compassionate release on several grounds, contending, first, that this Court lacks authority to consider or grant relief under his motion; second, even if the motion were properly before this Court, defendant does not meet the requirements for release; and, finally, even if he were eligible, defendant should not be granted compassionate release.  The government is wrong on all three counts.

A.    **The Defendant's Motion is Properly Filed and this Court has the Authority to Consider It**

The parties are in accord that, despite the defendant's pending appeal, his motion may properly be considered for an indicative ruling under Federal Rule of Criminal Procedure 37. Gov't Opp'n at 4; *see also* FED. R. CRIM. P. 37 (allowing a district court that "lacks authority to grant [a pending motion] because of an appeal that has been docketed and is pending" to issue an indicative ruling "stat[ing] . . . that it would grant the motion if the court of appeals remands for that purpose").  They also agree that his motion is not barred by the compassionate release statute's exhaustion requirement.  Gov't Opp'n at 4; *see also* 18 U.S.C. § 3582(c)(1)(A) (allowing a defendant to file a motion for compassionate release only "after [he] has fully exhausted all administrative rights to appeal . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*" (emphasis added)); Def.'s Mot., Ex. at 1 (showing defendant submitted a request on June 21, 2019, well over 30 days before this motion).

Rather, the parties dispute the reach of 18 U.S.C. § 3582(c)(1)(A), which defendant invokes in seeking compassionate release.  Specifically, the government contends that the statute does not apply to defendant because he is currently serving a sentence arising out of a D.C. Code violation and "18 U.S.C. § 3582(c)(1)(A) does not apply to prisoners . . . who are serving

sentences for D.C. Code offenses."  Gov't Opp'n at 5.  This contention does not hold up to

scrutiny.

### 1.    *Federal Jurisdiction over Local Offenses*

The effect of the First Step Act's amendment authorizing a defendant to seek

compassionate release directly from the court is relatively straightforward for the vast majority

of prisoners in the federal system whose terms of imprisonment are the result of federal offenses.

Its ramifications are less clear, however, for prisoners like defendant whose sentences for local

offenses were imposed by federal courts.  This owes to that fact that, typically, federal courts do

not have jurisdiction over local or state crimes, except in the District of Columbia.  The history

behind this jurisdictional quirk is that, until 1970, D.C.'s "local court system consisted of one

appellate court and three trial courts."  *Palmore v. United States*, 411 U.S. 389, 392 n.2 (1973).

Those trial courts—a juvenile court, a tax court and "the District of Columbia Court of General

Sessions"—all had "quite limited jurisdiction."  *Id*.  Indeed, the Court of General Sessions'

criminal jurisdiction was restricted to "misdemeanors and petty offenses," which it exercised

concurrently with the United States District Court for the District of Columbia.  *Id*.  This Court,

however, "had exclusive jurisdiction over felony offenses, even though committed in violation of

locally applicable laws."  *Id*.  It thus "was filling the role of both a local and federal court."  *Id*.

That changed when Congress overhauled the D.C. Court structure with the passage of the

District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, 84

Stat. 473, which "invested the local courts with jurisdiction equivalent to that exercised by state

courts," *Palmore*, 411 U.S. at 392 n.2.  The Act created the Superior Court of the District of

Columbia and granted it "jurisdiction over all criminal cases, including felonies, brought under

laws applicable exclusively to the District."  *Id*.

Vestiges of the old regime remain, however, and this Court retains jurisdiction to try certain local criminal offenses, as specified under D.C. Code § 11-502(3). This "troublesome anomaly among federal jurisdictional statutes," *United States v. Garnett*, 653 F.2d 558, 561 (D.C. Cir. 1981), grants this Court jurisdiction over "[a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense," D.C. Code § 11-502(3). The purpose of such anomalous jurisdiction is to "eliminat[e] the procedural difficulties of trying a single defendant for related federal and D.C. Code offenses in two courts." *Garnett*, 653 F.2d at 561 (internal quotation marks omitted). Thus, when a D.C. Code offense and a federal offense are properly joined under Rule 8 of the Federal Rules of Criminal Procedure, *United States v. Koritko*, 870 F.2d 738, 739 (D.C. Cir. 1989), this Court exercises something like "pendent jurisdiction" over the D.C. Code offense, *United States v. Kember*, 685 F.2d 451, 454 (D.C. Cir. 1982). When, in this case, defendant was charged with one federal offense and six D.C. Code offenses "based on the same act or transaction," FED. R. CRIM. P. 8(a), this Court properly exercised jurisdiction over all of them and imposed a sentence for both offenses to which defendant pled guilty, *United States v. Malenya*, 736 F.3d 554, 557 (D.C. Cir. 2013) (noting that "[t]he propriety of the district court's sentencing" a D.C. Code offender "must be inferred from the general grant of jurisdiction in D.C. Code § 11-502(3)").

### 2. *This Court Has Authority to Entertain Compassionate Release Motions Filed by D.C. Code Offenders Sentenced in Federal Court*

In attempting to forestall one set of "procedural difficulties" by retaining jurisdiction in this federal court over certain local offenses, D.C. Code § 11-502(3) has created a host of others. *See, e.g.*, *Malenya*, 736 F.3d at 557 (explaining that, although "in D.C. Superior Court the trial court sets the duration of any [term of] supervised release" but not the conditions attached

thereto, the question whether a federal court could nonetheless attach those conditions when sentencing a defendant for a D.C. Code offense is "at least subject to reasonable dispute"); *United States v. Belt*, 514 F.2d 837, 844 (D.C. Cir. 1975) (holding that federal evidentiary standards apply "in the case of indictments charging both U.S. Code and D.C. Code offenses" because using two separate evidentiary standards would be "patently not feasible"); *United States v. Brown*, 483 F.2d 1314, 1317–19 (D.C. Cir. 1973) (holding that, even when a defendant has been convicted of only D.C. Code offenses, the D.C. Circuit "should determine motions for bail pending appeal in accordance" with federal standards in part because applying D.C. law to D.C. Code offenders would mean "certain defendants in the federal courts of this jurisdiction would be treated more harshly than defendants in any other federal court"). The government's opposition poses yet another: whether prisoners serving sentences imposed by this Court as a result of D.C. Code offenses may move to have their sentence reduced under 18 U.S.C. § 3582(c)(1)(A).

The government answers that question in the negative. It arrives at that conclusion by first asserting, with no evidentiary support, that "[a]ccording to BOP personnel who handle sentence computation issues, the defendant has already served his entire federal sentence and he is now serving the D.C. Code portion of his sentence." Gov't Opp'n at 5. The government next asserts that "18 U.S.C. § 3582(c)(1)(A) does not apply to prisoners . . . who are serving sentences for D.C. Code offenses." *Id*. In support of that second contention, the government points to a federal regulation and a BOP Program Statement concerning the standards BOP will apply in determining whether to file a motion for compassionate release on a defendant's behalf. *Id*. (citing 28 C.F.R. § 571.64 (explaining that BOP "has no authority to initiate a request under 18 U.S.C. 4205(g) or 3582(c)(1)(A) on behalf of state prisoners housed in Bureau of Prisons

facilities or D.C. Code offenders confined in federal institutions"); *BOP Program Statement*

*5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18*

*U.S.C. §§ 3582 and 4205(g)* ("BOP Compassionate Release Program Statement"), UNITED

STATES DEP'T OF JUSTICE 15–16 (2019) (same)[9].  Therefore, according to the government,

"defendant's motion should be summarily denied because he is not eligible for compassionate

release under 18 U.S.C. § 3582(c)(1)(A)."  *Id.*  Although unstated, a partial predicate for the

government's argument may be that, because no similar allowance for direct motions exists in

the D.C. Code, *see* D.C. Code § 24-468 (providing for compassionate release only "[u]pon a

motion by the Director of the Federal Bureau of Prisons"), defendant's motion is not properly

before this Court.

The government's premises, however, are questionable.  As described above, the

defendant was sentenced to 115 months' imprisonment for his federal offense and 240 months'

imprisonment for his D.C. Code offense.  The government has pointed to no authority to support

its contention that defendant is no longer serving the portion of his sentence related to his U.S.

Code offense.  In fact, BOP labels both sentences as "current obligation[s]," Def.'s Mot, Ex. D at

3–4, with only one expiration date listed for both sentences in BOP's sentence computation, *id.*

at 5 (listing the "expiration full term date" as November 13, 2031).  Moreover, nothing in the

judgment indicates which of the sentences was to be served first.  Judgment at 2 (stating only

that defendant was "to be imprisoned for a term of 115 months on Count 1 and 240 months on

Count 3, to be served consecutively to each other").  In short, the record provides no basis to

conclude that defendant is currently serving only his D.C. Code sentence.

---

[9]       Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Even if defendant has completed the portion of his sentence related to his U.S. Code offense, the support the government musters for its second premise—that prisoners in defendant's position are ineligible for relief under the federal compassionate release provision— is likewise insufficient.  To begin the federal regulation on which the government relies concerns *BOP's* authority to initiate a motion for compassionate release.  The reach of that regulation is plainly stated:  "The *Bureau of Prisons* has no authority to initiate a [compassionate release] request under 18 U.S.C. 4205(g) or 3582(c)(1)(a) on behalf of state prisoners housed in Bureau of Prisons facilities or D.C. Code offenders confined in federal institutions."  28 C.F.R. § 571.64. Of course, whether BOP believes it possesses the power to move for compassionate release on behalf of a particular defendant has little bearing on whether a *court* may grant relief to a defendant under the compassionate release provision when the defendant himself has filed such a request.  In any event, whether the regulation even applies to prisoners like defendant, who were sentenced by a federal court on both U.S. and D.C. Code offenses is less than clear.  By grouping together "D.C. Code offenders confined in federal institutions" and "state prisoners housed in Bureau of Prisons facilities," the regulation seems targeted at those prisoners who were not sentenced by a federal court but are nonetheless in the custody of BOP.  Although states typically have the exclusive responsibility to prosecute and try state offenses, state offenders may nonetheless end up in federal prison facilities.  *See* 18 U.S.C. § 5003(a) ("The Director of the Bureau of Prisons . . . may contract with proper officials of a State or territory, for the custody . . . of persons convicted of criminal offenses in the courts of such State or territory.")  Similarly, all individuals convicted of felonies under the D.C. Code in Superior Court are "designated by the Bureau of Prisons to a penal or correctional facility operated or contracted for by the Bureau of Prisons."  D.C. Code § 24-101.  In other words, the regulation may be nothing more than a

direction to BOP wardens not to accept requests for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A) from prisoners convicted and sentenced in state courts or Superior Court.

Against the government's relatively scant support stands a bevy of D.C. Circuit precedent

that strongly suggests the Court may hear and rule on compassionate release motions under 18

U.S.C. § 3582(c)(1)(A) from prisoners like defendant, who were convicted and sentenced in this

Court for D.C. Code offenses.  Although "[d]efendants found guilty of violations of the D.C.

Code can only be sentenced under the D.C. Code," *United States v. Cutchin*, 956 F.2d 1216,

1219 (D.C. Cir. 1992), the procedure for imposition and control over that sentence is governed

by federal law.  For instance, in *United States v. Malenya*, a defendant was charged in this Court

with one U.S. Code offense and one D.C. Code offense.  *Malenya*, 736 F.3d at 556.  Pursuant to

a plea agreement, he pled guilty to only the D.C. Code offense, for which he was sentenced to

three years in prison to be followed by three years of supervised release, including several

special conditions.  *Id*.  On appeal the defendant argued that the district court was without

authority to attach those conditions.  Under the D.C. Code, Superior Court judges may only set

the duration of supervised release, D.C. Code § 24-403.01(b)(1)–(4), while the United States

Parole Commission is empowered to set the conditions of release, *id*. § 24-403.01(b)(6).  The

defendant argued that a similar procedure should have taken place following his pleading guilty

to a single D.C. Code offense.  *Malenya*, 736 F.3d at 557.  The D.C. Circuit responded that,

"[g]iven § 11-502(3)'s explicit grant of '*jurisdiction of . . . [a]ny offense* under any law

applicable exclusively to the District of Columbia' . . . there seems little basis for any claim that

the district court exceeded its jurisdiction in imposing conditions on supervised release."  *Id*.

(emphasis and alteration in original).  Having determined that the district court was within its

jurisdiction, the court reviewed the propriety of attaching conditions to the term of supervised

release for plain error and concluded that the question was "at least subject to reasonable dispute" and further determined that "allow[ing] the district court to attach conditions ha[d] the appeal of avoiding the peculiar result that no one [could] impose conditions on the supervised release of a defendant sentenced under § 11-502(3)." *Id.*

Such procedural anomalies also animated *United States v. Brown*, in which the D.C. Circuit held that motions for release pending appeal were governed by the laws of the U.S. not the D.C. Code. *Brown*, 483 F.2d at 1317. There, the defendant had been convicted in federal court of only D.C. Code offenses. *Id.* at 1315. He filed a notice of appeal and filed with the district court a motion for release pending appeal. *Id.* The district judge denied the motion because the defendant "did not meet the criteria for release set forth at 23 D.C. Code § 1325," which, at that time, was a "harsher bail provision[]" than the Federal Bail Reform Act. *Id.* at 1315 & n.4. The defendant argued that amendments to the Federal Rules of Civil and Appellate Procedure enacted after the D.C. law controlled and those amendments directed federal courts to look to the federal bail laws in determining whether a defendant should be released pending appeal. *Id.* at 1316 (citing FED. R. APP. P. 9 and FED. R. CRIM. P. 46). The government contended that the D.C. bail provisions nonetheless applied. The Circuit, in agreeing with defendant that federal law controlled, worried that application of D.C. bail provisions would mean that "certain defendants in the federal courts of this jurisdiction," namely those tried for and convicted of D.C. Code offenses, "would be treated more harshly than defendants in any other federal court." *Id.* at 1318. Avoiding that result, the Circuit held that the federal standard should apply to all individuals tried in federal proceedings. *Id.* at 1317.

The government's position in this case would engender similarly problematic results. For instance, had the sentencing judge in this case imposed two *concurrent* sentences of equal length,

14

the government's theory that the propriety of compassionate release under 18 U.S.C.

§ 3582(c)(1)(A) is coterminous with a federal term of imprisonment would render valueless

defendant's right to petition the court directly.  According to the government, under such

circumstances the Court would be powerless to alter the term of imprisonment resulting from the

D.C. Code offense, even if it determined the defendant warranted compassionate release under

the standards prescribed by 18 U.S.C. § 3582(c)(1)(A).  Presumably the Court would be required

to wait until the compassionate release procedure prescribed by the D.C. Code, which requires "a

motion by the Director of the Federal Bureau of Prisons," D.C. Code § 24-468, had been

followed before it could release the defendant from both terms of imprisonment.  Adding to the

confusion, the standards for compassionate release outlined in the U.S. and D.C. Codes differ

from one another.  *Compare* 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 *with* D.C. Code

§ 24-468.  In the event that both federal and D.C. procedural requirements are met, the

government's position would thus require courts to apply two separate standards to each term of

imprisonment.

Still more problems are presented by the government's theory.  Had BOP officials

determined that defendant had yet to begin serving the federal portion of his sentence, would he

be barred from obtaining compassionate release under the federal statute until that "portion"

commenced?  The government's theory might require as much given its implication that 18

U.S.C. § 3582(c)(1)(A) applies only to those serving sentences related to U.S. Code offenses.

Yet such an interpretation would not be in accord with how courts have typically conceived of

the sentences they impose.  *Cf. Garlotte v. Fordice*, 515 U.S. 39, 45–46 (1995) (holding, under

the habeas statute, that "a prisoner serving consecutive sentences is in custody under any one of

them" for the entire aggregate duration of those sentences and is free to challenge terms of

imprisonment that both have yet to commence and have already been completed (internal

quotation marks omitted)).

To avoid the innumerable "procedural difficulties" that would attend the government's

position, *Garnett*, 653 F.2d at 561, the federal compassionate release provision is better read as a

procedural mechanism that applies to all sentences imposed by federal courts.  Defendant's

motion is thus properly filed and this Court, having imposed a sentence for violations of both the

U.S. Code and the D.C. Code, has the authority to grant defendant relief under 18 U.S.C. § 3582

as to both.

### B.        Extraordinary and Compelling Reasons Exist for Compassionate Release

The government next argues that "defendant does not meet the [requirements of the]

Sentencing Commission's policy statement for compassionate release at U.S.S.G.

§ 1B1.13(1)(A)."  Gov't Opp'n at 5.  In a bewildering statement, the government contends this is

so because defendant "has not served 75 percent of his sentence and he is not seeking

compassionate release based upon family circumstances."  *Id*.  True enough, the defendant is not

seeking release based on family circumstances. *See* Def.'s Mot. at 15.  The government,

however, completely misstates the policy statement's requirements to show "extraordinary and

compelling reasons" that warrant release on account of a defendant's age and physical health.

As explained in Part II, *supra*, those reasons may exist when "[t]he defendant (i) is at least 65

years old; (ii) is experiencing a serious deterioration in physical or mental health because of the

aging process; and (iii) has served at least 10 years *or* 75 percent of his or her term of

imprisonment, *whichever is less*."  U.S.S.G.§ 1B1.13, cmt. n.1(B).  Given that defendant began

serving his sentence in 2003, there is no question that he has served more than 10 years.  That the

defendant is over 65 is also undisputed.  Gov't Opp'n at 3–4.  So long as defendant is

"experiencing a serious deterioration in physical or mental health because of the aging process,"
he would meet the requirements of the policy statement.  U.S.S.G.§ 1B1.13, cmt. n.1(B).

Defendant asserts that "Prostate cancer is overwhelmingly a disease of advanced age,
with both the incidence of cancer and its mortality increasing as an individual ages."  Def.'s Mot.
at 15–16.  Indeed, although once in remission, defendant's prostate cancer has recently returned
and has resulted in a diagnosis of "advanced prostate cancer."  *Id*. at 16.  The treatment for
defendant's cancer has also contributed to a "deterioration in [his] physical . . . health."
U.S.S.G.§ 1B1.13, cmt. n.1(B).  He experiences "severe anemia," "dehydration," "intense lower
back pain," a markedly reduced appetite, "dizziness," "hot flashes," and "drastic retention of
fluid in his hands, feet, legs and knees" reducing his mobility.  Def.'s Mot. at 17.  Aside from
conditions related to his cancer and its treatment, defendant has also been diagnosed with
hypertension, Hepatitis C, both serious medical conditions in their own right.  Def.'s Reply at 8,
ECF No. 47.

The government makes no attempt to argue that defendant's physical condition has not
seriously deteriorated except to say that "there is no indication . . . that BOP is no longer able to
treat his prostate cancer."  Gov't Opp'n at 8.  Instead it focuses most of its attention on rebutting
defendant's assertion that "the COVID-19 pandemic adds special urgency" to his request.
Def.'Mot. at 18 (capitalization altered).  The government assures the Court that "BOP is
prepared to deal with pandemics such as the coronavirus."  Gov't Opp'n at 7.  Despite the
precautions taken by BOP, however, 449 inmates and 280 BOP staff members have tested
positive for the disease and sixteen inmates have already died, including four in North Carolina,
the state where defendant is currently detained.  *See COVID-19 Coronavirus*, FEDERAL BUREAU
OF PRISONS, https://www.bop.gov/coronavirus/ (last visited April 16, 2020).  Defendant is

doubtless at high risk should he become infected.  The Centers for Disease Control and Prevention ("CDC") has explained that "older adults and people of any age who have serious underlying medical conditions" are at risk of severe illness should they contract COVID-19.

*People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 16, 2020).  Defendant, at 75, has advanced prostate cancer and his physical health is deteriorating.  Although the relevant policy statement directs courts to consider only those physical and mental issues a defendant "is experiencing," the Court cannot turn a blind eye to the rapid spread of a virus to which "aging" individuals are particularly vulnerable and which is likely far more difficult to contain in cramped prison quarters.

U.S.S.G.§ 1B1.13, cmt. n.1(B); *see also Social Distancing, Quarantine, and Isolation*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html ("COVID-19 spreads mainly among people who are in close contact (within about 6 feet) for a prolonged period.") (last visited April 16, 2020).

The defendant's age, amount of time he has already served, and deteriorated health, along with his particular need to avoid exposure to the current worldwide pandemic convincingly show that "[e]xtraordinary and compelling reasons warrant" a reduction in his sentence.  U.S.S.G § 1B1.13(1)(A) & cmt. n.1(B).[10]

---

[10]    Defendant also notes that he meets the requirements for release described in the BOP Compassionate Release Program statement.  Def.'s Mot. at 15 (citing BOP Compassionate Release Program Statement at 6).  As the government correctly notes, the Sentencing Commission's policy statement is "binding on the court," Gov't Opp'n at 5; *see also United States v. Goldberg*, Crim. Case No. 12-180 (BAH), 2020 WL 1853298 (D.D.C. Apr. 13, 2020) (declining to "adopt the view of some courts that U.S.S.G. § 1B1.13 may be eschewed as outdated" and holding that "the limitations in U.S.S.G. § 1B1.13 apply and are binding"); *accord Dillon v. United States*, 560 U.S. 817, 826 (2010) (noting "[t]he substantial role Congress gave the Commission with respect to sentence-modification proceedings" under section 3582(c), and holding that Sentencing Commission's policy statement governing section 3582(c)(2) proceedings were binding), and because the defendant meets the requirements of that policy statement, the Court need not consider the BOP program statement.

Finally, the government briefly argues that the statutorily mandated consideration of the factors set forth in 18 U.S.C. § 3553(a) weighs against compassionate release even if, as the Court finds, the defendant otherwise meets the requirements of the Sentencing Commission's policy statement.  The government, however, makes no attempt to apply those factors to the defendant's case.  Those factors do not counsel against reducing defendant's sentence.  The "nature and circumstances of the [defendant's] offense" are, of course, serious.  18 U.S.C. § 3553(a)(1).  Defendant and an accomplice committed an armed robbery and defendant "struck a victim with a clothing rack, placed a gun to the victim's head, and pulled the trigger twice." *Hammond*, 354 F. Supp. 3d at 34.  When the gun did not fire, defendant fled.  *Id*.  Aspects of defendant's "history and characteristics" are also indisputably troubling.  18 U.S.C. § 3553(a)(1).  The government avers that "[a]t the time he committed this offense, the defendant had two prior convictions for robbery."  Gov't Opp'n at 6.  The defendant's more recent history, however, must also be taken into account.  *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (permitting consideration of "evidence of a defendant's rehabilitation since his prior sentencing" and holding that "such evidence may . . . support a downward variance from the advisory guidelines range" when a defendant's case has been remanded to a district court for resentencing).  Despite the RCI Warden's assertion that defendant's "current violence" would present an "undue risk to the community," Def.'s Mot., Ex. E at 1, as noted *supra* n.4, nothing in the record supports this claim, *see* Def.'s Supp. to Def.'s Motion, Ex. R at 2 (explaining that defendant "has not received any [disciplinary] incident reports since his arrival" at RCI).  Defendant has already served 18 years in prison, and with good time credit he has earned throughout his imprisonment, he has served enough time to satisfy a sentence of 20.5 years' imprisonment.  Def.'s Mot. at 5–6.  This amounts to over two thirds of his initial sentence.

19

Given defendant's age at the time of sentencing, a 20.5 year sentence would have "reflect[ed] the seriousness of the offense . . . and . . . provid[ed] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). So to would a sentence set to release the defendant at the age of 75 "afford adequate deterrence to criminal conduct" and "protect the public from" any possible further crimes he might commit. *Id*. § 3553(a)(2)(B)–(C).

The defendant's initial sentence was also near the high end of sentences available to the sentencing judge. *Id*. § 3553(a)(3). The guidelines recommendation for his U.S. Code offense was 92–115 months. *See* Gov't Sentencing Mem. at 3, ECF No. 20. He was, therefore, sentenced at the maximum of the guidelines range. For the D.C. Code offense, the judge had discretion to sentence defendant anywhere between 5 years and "life without the possibility of release." Gov't Sentencing Mem. at 4. While a sentence of 240 months falls short of a life term, it represented something close to a life sentence. Defendant was 57 at the time he was arrested, Def.'s Mot., Ex. A at 2, and the 20-year sentence was set to be served consecutively with his 115-month sentence, meaning his total aggregate sentence was nearly 30 years' imprisonment such that defendant would be 87 by the time of his release. Given that the defendant's terms of imprisonment could have been set to run concurrently, the minimum penalty defendant faced was 92 months' imprisonment, or 7 years and 8 months. A sentence of 20.5 years' imprisonment, releasing the defendant when he is well into his 70s, is therefore a serious penalty and clearly complies with the goals of the factors set out in 18 U.S.C. § 3553(a). The last of the government's arguments is therefore unconvincing.

"[A]fter considering the factors set forth in 18 U.S.C. § 3553(a)" and determining that "[e]xtraordinary and compelling reasons warrant" a reduction in defendant's sentence, the only impediment to ensuring such a reduction would be "consistent" with U.S.S.G. § 1B1.13 is

determining whether "defendant is . . . a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).  Defendant's advanced age and reduced mobility caused by his cancer treatment, make it difficult to imagine that he will endanger the community. Moreover, defendant's ability to serve the entirety of his prison sentence without disciplinary incident is commendable.  The Court thus finds that defendant is not a danger to the community and a reduction in his sentence is fully justified under both 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13.

## IV.    INDICATIVE RULING

The defendant's motion is properly before this Court and has clearly shown that a reduction in his sentence warranted by "extraordinary and compelling reasons" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  Pursuant to Federal Rule of Criminal Procedure 37(a)(3), the Court "state[s] . . . that it would grant the motion if the court of appeals remands for that purpose" and that his sentence would be reduced to a sentence of time served followed by concurrent terms of supervised release of three and five years, as ordered in the initial judgment in this case, *see* Judgment at 3.[11]

Date: April 16, 2020

_____
BERYL A. HOWELL
Chief Judge

---

[11]    18 U.S.C. § 3582(c)(1)(A) provides only for reductions of "imposed term[s] of imprisonment," and provides no authority to adjust terms of supervised release.  While other provisions of law may provide such authority, the Court's power under the instant motion is limited to adjusting defendant's term of imprisonment.